# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DEBT BUYERS' ASSOCIATION,<br>10440 Pioneer Boulevard, Suite 2<br>Santa Fe Springs, California 90670,<br><br>Plaintiff,<br><br>v.<br><br>JOHN W. SNOW, Secretary of the Treasury,<br>United States Department of the Treasury<br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220<br>    Serve On:<br>    Mr. Alberto R. Gonzales<br>    Attorney General of the United States<br>    950 Pennsylvania Ave., N.W., Rm. B-324<br>    Washington, D.C. 20530<br>        and<br>    Mr. Kenneth Wainstein,<br>    United States Attorney, D.C.<br>    Attn: Civil Process Clerk<br>    501 Third Street, N.W., Fourth Fl<br>    Washington, D.C. 20530<br><br>and<br><br>MARK W. EVERSON, Commissioner<br> of Internal Revenue,<br>Internal Revenue Service<br>1111 Constitution Avenue, N.W.<br>Washington, D.C. 20224<br>    Serve On:<br>    Donald L. Korb, Chief Counsel<br>    Internal Revenue Service<br>    Attn: SE: OPR Room 7238/IR<br>    1111 Constitution Avenue, N.W.<br>    Washington, D.C. 20224,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

Plaintiff Debt Buyers' Association ("Plaintiff" or ""DBA"), by its undersigned attorneys, Womble Carlyle Sandridge & Rice, PLLC, as and for its Complaint for Declaratory and Injunctive Relief, alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff seeks relief from a regulation that forces an entire industry to choose between violating one or the other of two federal laws.  At the heart of this case is the direct conflict between a Treasury regulation (Treas. Reg. § 1.6050P-2(e)) and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1629a-1629o (the "FDCPA").  Plaintiff seeks a declaratory judgment declaring this interpretive regulation promulgated and enforced by Defendants John W. Snow, Secretary of the Treasury, and Mark W. Everson, Commissioner of Internal Revenue (collectively, "Defendants"), to be contrary to law, unenforceable and invalid.  Plaintiff further seeks a temporary and preliminary injunction restraining Defendants, and their agents, employees, and successors, from enforcing such regulation during the pendency of this action, and a permanent injunction restraining them from such enforcement thereafter.  Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction are being filed and served simultaneously herewith.

2.     Specifically, Plaintiff, whose members purchase portfolios of delinquent consumer loans and receivables from regulated lending institutions, finance companies and credit card companies (and sometimes from other prior purchasers of such debt), and then attempt to collect such loans and receivables ("Debt Buyers"), seeks relief from Treas. Reg. § 1.6050P-2(e), which unlawfully extends the application of Section 6050P of the Internal Revenue Code of

2

1986, as amended, 26 U.S.C. § 6050P (the "Code"), to Debt Buyers. Section 6050P requires any "applicable entity" that discharges the indebtedness of any person to (i) file an information return setting forth, among other things, "the amount of the indebtedness discharged" and (ii) issue to the person whose debt was discharged a similar information statement. Under Section 6050P(c), the term "applicable entity" includes only regulated banks, savings and loan institutions, credit unions, and their respective affiliates, certain Federal agencies, and "any organization a significant trade or business of which is the lending of money." Because Treas. Reg. § 1.6050P-2(e) proclaims that "lending money includes acquiring an indebtedness not only from the debtor at origination but also from a prior holder of the indebtedness," Defendants have deemed a Debt Buyer to be an "applicable entity" and thus subject to the information reporting and filing requirements of Section 6050P, even though Debt Buyers do not make loans or otherwise engage in the lending of money, are not licensed to lend money, and do not originate or approve loans. By virtue of Treas. Reg. § 1.6050-2(e), Debt Buyers are required under Section 6050P to provide to consumer borrowers and the IRS certain information regarding the components of discharged indebtedness that they generally do not receive from originating lenders from whom they purchase delinquent consumer loans and cannot calculate on their own.

3.  Debt Buyers' collection efforts are regulated by the FDCPA, which prohibits Debt Buyers from making any "false representation" of the "character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Treasury Regulation § 1.6050P-2(e) will force Debt Buyers to make informational filings that will almost certain run afoul of the FDCPA.

4.  As fully set forth below, DBA seeks relief on the grounds that Treas. Reg. § 1.6050P-2(e) is an interpretive regulation that surpasses the statutory authority under which it was enacted, invades an independent federal statutory scheme – *i.e.*, the FDCPA – expressly

3

created by Congress to be the primary regulatory force governing the debt buying industry, and effectively displaces the independent common and statutory laws of the sovereign states that have traditionally bestowed certain entitlements upon the members of the debt buying industry. These effects of Defendants' conduct forcibly deprive Debt Buyers of their legal and economic rights in violation of due process. Because Debt Buyers are forced to comply with Section 6050P, by virtue of Treas. Reg. § 1.6050P-2(e), at the expense of violating critical provisions of the FDCPA, that regulation forces Debt Buyers to be lawbreakers and exposes them to civil liability under the FDCPA.

5.      Accordingly, Plaintiff, on behalf of its members, seeks an order from this Court declaring Treas. Reg. 1.6050P-2(e) contrary to law, unenforceable and invalid, and enjoining Defendants from enforcing that regulation with respect to Plaintiff's members.

## PARTIES, JURISDICTION AND VENUE

6.      Plaintiff Debt Buyers' Association is a tax-exempt trade association incorporated under the laws of the State of California and having its principal place of business at 10440 Pioneer Boulevard, Suite 2, Santa Fe Springs, California 90670. DBA's members are citizens of virtually all of the states in the continental U.S., and most are engaged exclusively in the business of purchasing, collecting and/or reselling delinquent consumer loans and receivables.

7.      Defendant John W. Snow, in his official capacity, is the Secretary of the United States Treasury, Department of the Treasury.

8.      Defendant Mark W. Everson, in his official capacity, is the Commissioner of Internal Revenue of the United States of America.

9.      Defendants are sued in their official capacities. Defendants are responsible for enforcing the revenue laws of the United States generally and specifically the provisions of (i)

Section 6050P of the Internal Revenue Code of 1986, as amended, I.R.C. (26 U.S.C.) § 6050P, and (ii) Treasury Regulation § 1.6050P-2, adopted by Treasury Decision 9160, October 25, 2004.

10.    This Court has jurisdiction over this action pursuant to (i) 28 U.S.C. § 1331 (federal question jurisdiction), (ii) 28 U.S.C. § 1340 (jurisdiction concerning internal revenue laws), and (iii) 5 U.S.C. § 702 (jurisdiction to review agency action).

11.    This Court has the power and authority to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 (Declaratory Judgment Act) and to issue an injunction pursuant to 28 U.S.C. § 2202 (further relief based on declaratory judgment) and Rule 65 of the Federal Rules of Civil Procedure and Local Rule 65.1.

12.    Venue is proper under 28 U.S.C. § 1391(e) (general venue provision in civil actions against an officer or employee of the United States in his official capacity), in that this is a civil action against two officers of the United States, in their official capacities and having their official residences in this judicial district.

## FACTS

### A.    Debt Buyers And The Debt Buying Industry.

13.    Debt Buyers are in the business of purchasing and collecting delinquent consumer loans and receivables. The members of DBA who are Debt Buyers do not originate loans or otherwise lend money; rather, they specialize in purchasing at a discount from lenders (*i.e.*, regulated lending institutions, finance companies, credit card companies, etc.), portfolios of consumer loans that have been in default for a significant period of time ("Consumer Loans"). Examples of Consumer Loans that Debt Buyers routinely purchase include mortgage loans, home equity lines of credit, automobile loans, student loans and credit card receivables.

14.    The DBA has approximately 550 members.  The debt buying collection industry comprises more than 10,000 companies and employs roughly 200,000 individuals engaged in the purchasing and collecting of consumer debt.

15.    The debt buying industry provides a valuable service and a substantial benefit to the United States financial markets and American consumers.  Lending institutions, such as banks, savings and loan associations and credit card companies, each year charge-off bad or delinquent consumer debt in excess of $100 billion, representing tens of millions of individual Consumer Loans.  By purchasing Consumer Loans in default, Debt Buyers enable lending institutions to recoup a portion of their losses which, in turn, helps keep interest rates low and the prices of homes and consumer products and services more stable.   Without an efficient market for the disposition of defaulted consumer debt provided by the debt buying industry, consumer interest rates and prices would be higher, resulting in a significant drag on the U.S. economy.

**B.    Lenders And The Consumer Lending Industry.**

16.    Consumer Loans are usually originated by large, institutional lenders like banks, finance companies and credit card companies ("Originating Lenders").

17.    Before making a Consumer Loan, an Originating Lender typically (i) evaluates the creditworthiness of the consumer borrower, (ii) analyzes the collateral, if any, pledged as security for the Consumer Loan, (iii) establishes payment and other terms for the Consumer Loan, and most importantly, (iv) provides the underlying documentation for the consumer lending or credit arrangement.

18.    If a Consumer Loan becomes delinquent, the underlying documentation usually allows the Originating Lender to charge default interest, late charges, attorneys' fees and other costs and expenses of enforcing and collecting the loan.

19.    It is customary in the consumer lending industry that once a Consumer Loan has been delinquent for more than 180 days, the Originating Lender "charges off" on its books (a "Charge-Off") (and presumably claims a corresponding bad debt deduction for Federal income tax purposes) the aggregate amount of the unpaid principal, accrued and unpaid interest, late charges, attorneys' fees and other related costs and expenses (the "Debt Components").

20.    Once a Charge-Off has been taken, the Originating Lender ordinarily transfers the Consumer Loan to a book account that records the aggregate amount of the Charge-Off, but does not memorialize the Debt Components at the time of the Charge-Off.

21.    Often, an Originating Lender will seek to recoup a portion of its lost investment in a Consumer Loan that has been charged-off by selling it, usually as part of a portfolio of delinquent Consumer Loans, to a Debt Buyer.

**C.    The Purchasing And Collecting Of Delinquent Consumer Loans By Debt Buyers.**

22.    Unlike an Originating Lender, a Debt Buyer does not engage in any of the underwriting or collateral analysis associated with originating a Consumer Loan. Rather, a Debt Buyer will offer a purchase price for a portfolio of delinquent Consumer Loans based primarily on (i) the size of the portfolio, (ii) the type of consumer debt involved, and (iii) sometimes a computer analysis that provides data on the likelihood of repayment based on statistical models of the account data. Very often, this equation translates into a Debt Buyer purchasing a portfolio of delinquent Consumer Loans for a fraction of the total amount owed to the Originating Lender.

23.    Not only are there striking differences in the activities performed by Originating Lenders, on the one hand, and Debt Buyers, on the other, but the risks and rewards of their respective businesses diverge greatly. Originating Lenders are financial intermediaries who borrow money at one rate of interest (either from the Federal Reserve Bank or other institutional

lenders, or through deposits made by customers), loan out that money at a higher rate of interest, and realize a profit based upon the "spread" between the two interest rates. Debt Buyers, in contrast, are not financial intermediaries, but rather investors who purchase assets (defaulted consumer debt) at a discount and attempt to earn a return on that investment through the debt collection process. Obviously, the realization of profit by Originating Lenders is more certain while the potential for realization of significant profits, at the risk of substantial losses, by Debt Buyers is greater.

24.      When a Debt Buyer acquires a portfolio of defaulted Consumer Loans, the Debt Buyer generally receives from the Originating Lender only the account balance with respect to each Charge-Off taken by the Lender. In other words, the Debt Buyer often does not know the component amounts of stated principal, unpaid accrued interest, late fees and other charges that comprise the total amount due from the consumer borrower.

25.      Once a Debt Buyer has purchased a portfolio of defaulted Consumer Loans, it may engage in collection efforts (or hire a third-party collection agency to engage in such efforts), which may include locating the borrowers, determining whether the borrowers are in bankruptcy, commencing legal proceedings, or otherwise encouraging payment of all or a portion of the delinquency.

**D.      Section 6050P Of The Internal Revenue Code And Its Requirements.**

26.      Through their promulgation of Treas. Reg. § 1.6050P-2(e), Defendants have asserted that Section 6050P of the Code applies to DBA members and other Debt Buyers.

27.      Section 6050P requires "applicable entities" that discharge all or a portion of the indebtedness of any person during the year to issue and file information returns setting forth certain information about the borrower and the discharged debt.

28.    More specifically, Section 6050P of the Code, Returns Relating to the

Cancellation of Indebtedness by Certain Entities, provides, in pertinent part:

(a) IN GENERAL. – Any **applicable entity** which discharges (in whole or in part) the indebtedness of any person during any calendar year shall make a return (at such time and in such form as the Secretary may by regulations prescribe) setting forth –
(1) the name, address, and TIN of each person whose indebtedness was discharged during such calendar year,
(2) the date of the discharge and the amount of the indebtedness discharged, and
(3) such other information as the Secretary may prescribe.

(b) EXCEPTION. – Subsection (a) shall not apply to any discharge of less than $600.

(c) DEFINITIONS AND SPECIAL RULES.   – For purposes of this Section –

(1) APPLICABLE ENTITY. – The term "applicable entity" means –
(A) an executive, judicial, or legislative agency (as defined in section 3701(a)(4) of title 31, United States Code), and
(B) an applicable financial entity.

(2) APPLICABLE FINANCIAL ENTITY.  The term "applicable financial entity" means –
(A) any financial institution described in section 581 or 591(a) and any credit union,
(B) the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, the National Credit Union Administration, and any other Federal executive agency . . . , and any successor or subunit of any of the foregoing,
(C) any other corporation which is the direct or indirect subsidiary of any entity referred to in subparagraph (A) . . . , and
(D) **any organization a significant trade or business of which is the lending of money.**

\*        \*        \*

(d) STATEMENTS TO BE FURNISHED TO PERSONS WITH RESPECT TO WHOM INFORMATION IS REQUIRED TO BE FURNISHED. – Every applicable entity required to make a return under subsection (a)

9

shall furnish to each person whose name is required to be set forth in such return a written statement showing –

> (1) the name and address of the entity required to make such return, and

> (2) the information required to be shown on the return with respect to such person.

The written statement required under the preceding sentence shall be furnished to the person **on or before January 31** of the year following the calendar year for which the return under subsection (a) was made.

*     *     *

26 U.S.C. § 6050P (emphasis added). A complete and accurate copy of Section 6050P is incorporated herein and attached hereto as Exhibit 1.

29. The Treasury Regulations under Section 6050P provide that an applicable entity that discharges an indebtedness of any person of $600 or more must file with the IRS the required information return on IRS Form 1099-C. Treas. Reg. § 1.6050P-1(a)(1). The applicable entity must also furnish to such person a copy of the Form 1099-C by January 31. Treas. Reg. § 1.6050P-1(f). A true and correct copy of Treas. Reg. § 1.6050P-1 and -2 is incorporated herein and attached hereto as Exhibit 2.

30. Section 6050P of the Code was originally enacted as part of the Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, Title XIII, § 13252(a), 107 Stat. 531. In its original form, Section 6050P imposed the obligation to issue and file information returns with respect to discharged debt upon "applicable financial entities," defined to mean (i) certain Federal agencies, (ii) regulated banks and savings and loan associations, (iii) credit unions and (iv) any subsidiary of any entity described in clause (ii) or (iii) which, by virtue of being affiliated with such an entity, was subject to supervision and examination by a Federal or state agency.

10

31.    Based upon the accompanying legislative history, in adding Section 6050P,

Congress intended to address the fact that the Code "[did] not require *lenders* to file information

returns with respect to discharged debt." *See* H. R. REP. No. 103-213, at 670-71 (1993) (Conf.

Rep.), *as reprinted in* 1993 U.S.C.C.A.N. 1359-1360 (emphasis added).

32.    Congress expanded the applicability of Section 6050P to "any organization a

significant trade or business of which is the lending of money" – Section 6050P(c)(2)(D) – as

part of the Ticket to Work and Work Incentives Improvement Act of 1999, Pub. L. No. 107-204,

§ 533(a), 113 Stat. 1860 (the "Act").

33.    According to the Conference Committee Report accompanying the Act, Congress

believed it was "appropriate to treat discharges of indebtedness that are made by similar entities

in a similar manner," and "to extend the scope of this information reporting provision to include

indebtedness discharged by any organization a significant trade or business of which is the

lending of money (*such as finance companies and credit card companies whether or not

affiliated with financial institutions*). H. R. REP. No. 106-478 (1999) (Conf. Rep.), 106 H. Rpt.

478, at *110 (Lexis) (emphasis added).

34.    Given (i) the types of entities subject to the information reporting requirements of

Section 6050P (namely, regulated banks, regulated savings and loan associations, credit unions,

certain Federal agencies that are involved in the regulation and administration of financial

institutions, and any other Federal agency) *prior* to the Act, (ii) the reference in the original

legislative history behind Section 6050P to *lenders*, (iii) the reference in the Act's legislative

history to *similar* entities being treated similarly, (iv) the mention in the Act's legislative history

of finance companies and credit card companies to illustrate who is engaged in the *business of

lending money,* and (v) the substantial *differences* in purpose and operations between Originating

Lenders and Debt Buyers, it is clear that Congress intended Section 6050P(c)(2)(D), in referring to entities in the business of lending money, to apply only to Originating Lenders and certainly not to Debt Buyers. When Congress enacted Section 6050P in 1993 and amended it in 1999, presumably it understood that lending institutions would not be exposed to liability under the FDCPA for issuing inaccurate Forms 1099-C. Congress was plainly aware that the FDCPA applies to Debt Buyers who would have potential liability under the FDCPA for producing inaccurate Forms 1099-C. Accordingly, it follows that Congress intentionally limited the application of Section 6050P to loan originators and excused Debt Buyers from having to issue and file Forms 1099-C in order to avoid putting Debt Buyers in conflict with the FDCPA, Treas. Reg. § 1.6050P-2(e) notwithstanding.

35.    Ignoring the express language of Section 6050P, as well as its legislative history, purpose and intent, Defendants have erroneously determined in Treas. Reg. § 1.6050P-2(e) that DBA members are in the business of lending money and are, therefore, "applicable financial entities" for purposes of Section 6050P, despite the fact that Debt Buyers do not lend money and are not engaged in any other aspects of the loan origination process.

36.    Treasury Regulation § 1.6050P-2(e) provides, in pertinent part, that "lending money includes acquiring an indebtedness not only from the debtor at origination but also from a prior holder of the indebtedness. Gross income arising from indebtedness is gross income from the lending of money without regard to who originated the indebtedness." *See* Ex. 2.

37.    Defendant's treatment of Debt Buyers as lenders first appeared in Prop. Treas. Reg. § 1.6050P-2(e). The preamble to Prop. Treas. Reg. § 1.6050P-2 states that "an organization that buys and holds loans is treated as an organization that lends money." *See* Notice of Proposed Rule Making, 67 Fed. Reg. 114, 40,629 (June 13, 2002) attached hereto as Exhibit 3.

Moreover, according to Defendants in that preamble, the rationale for such treatment was to be consistent with the Temporary Treasury Regulations issued under Section 6050J of the Code, relating to information returns for foreclosures and abandonments of property that is security for indebtedness. *See id.*

38.    Section 6050J(a) of the Code provides that any person who, in connection with a trade or business, lends money secured by property and who either "(i) in full or partial satisfaction of any indebtedness, acquires an interest in any property that is security for such indebtedness or (ii) has a reason to know that the property in which such person has a security interest has been abandoned," must make an information return. *See* 26 U.S.C. § 6050J(a). The IRS has provided Form 1099-A for this purpose. Treasury Regulation § 1.6050J-1T, Q&A-22 states that, "[t]he subsequent holder of a loan is treated as the lender for purposes of this reporting requirement and is the party required to report with respect to events occurring after the date he acquires the loan." Apparently, Defendants believed that in promulgating Treas. Reg. § 1.6050P-2(e), they were conforming the regulations under Section 6050P to Q&A-22 under the Section 6050J regulations.

39.    However, Section 6050J(b) contains an exception for Consumer Loans. It states that Section 6050J(a) *does not apply* "to any loan to an individual secured by an interest in tangible personal property which is not held for investment and which is not used in a trade or business." *See* 26 U.S.C. § 6050J(b). In other words, Section 6050J is inapplicable to non-business loans such as Consumer Loans. Indeed, the legislative history of Section 6050J emphasizes that "[a]n exception is provided for *all consumer loans*." H.R. REP. NO. 98-432II, at 1355 (1984) (emphasis added). Because Treas. Reg. § 1.6050P-2(e) applies to all purchased loans including Consumer Loans, that regulation does not make Section 6050P consistent with

Section 6050J. Particularly in the context of DBA's members, the extension of the application of Section 6050P to Debt Buyers through the issuance of Treas. Reg. § 1.6050P-2(e) creates an information reporting obligation for Debt Buyers where none existed before, including under Section 6050J. As a result, Defendants have failed in their attempt to offer any rational basis for the promulgation of that regulation.

**E.    Debt Buyers Do Not Receive The Information Required To Comply With Section 6050P.**

40.    Even though Section 6050P was not intended to apply to Debt Buyers, and notwithstanding that Debt Buyers usually do not receive from Originating Lenders the information necessary to accurately complete Forms 1099-C, Defendants nonetheless maintain that Debt Buyers must comply with the statute by furnishing borrowers whose debts have been discharged in whole or in part with Forms 1099-C by January 31 of the year following the calendar year in which the discharge of indebtedness occurred. *See* Treas. Reg. § 1.6050P-1(f)(3).  In the instant case, DBA members must comply by January 31, 2006 – less than two weeks from the filing of this Complaint.[1]  Debt Buyers must also file Forms 1099-C with the IRS by February 28 of the year following the calendar year in which the discharge of indebtedness occurred. *Id.* § 1.6050P-1(a)(4).

41.    IRS Form 1099-C requires the creditor to state in Box 2 of that Form the amount of debt cancelled.  A true and correct copy of the 2005 version of Form 1099-C and its instructions are incorporated herein and attached hereto as Exhibit 4.  Box 3 of the Form requires

---

[1]    In December 2005, DBA petitioned the IRS for a one-year postponement of the applicability of the information reporting requirements of Section 6050P to participants in the debt buying industry.  After a meeting with IRS representatives and two written submissions to the IRS, on or about January 12, 2006, the IRS telephoned DBA's counsel to advise that it was denying the request for postponement.

the creditor to state how much interest was included in the amount reflected in Box 2. The instructions to Form 1099-C state on page AC-3 that for a lending transaction, the creditor is required to report only the stated principal. Those instructions also state that if a creditor reports interest as part of the cancelled debt in Box 2, it mush show the interest separately in Box 3. The purpose of Form 1099-C is, according to Defendants in its Notice and Request for Comments Regarding Form 1099-C, to "verify that the debtor has included the proper amount of cancelled debt in income on his or her income tax return." A true and accurate copy of that Notice and Request for Comments is incorporated herein and attached hereto as Exhibit 5.

42.    When a Debt Buyer forgives or discharges all or a portion of a defaulted Consumer Loan that it has purchased (or is otherwise required by the regulations under Section 6050P to issue a Form 1099-C because some other "identifiable event" has occurred), that Debt Buyer usually will not be in a position to accurately reflect on the Form 1099-C the amounts to be filled in Box 2 or Box 3 of the Form. As stated earlier in this Complaint, the Debt Buyer generally does not know, and cannot obtain from the Originating Lender, the stated principal of the Consumer Loan nor the unpaid accrued interest on the loan. The Debt Buyer typically receives from the Originating Lender only the aggregate amount owed by the consumer borrower that includes principal, interest and other sums. As a result, the Debt Buyer is usually unable to accurately report (i) in Box 2 only the amount of stated principal discharged and (ii) in Box 3 the amount of interest included in Box 2. Treasury Regulation § 1.6050P-2(e) effectively reaches backwards to impose requirements that cannot be complied with.

**F.    Defendants' Enforcement Of The Regulation Will Likely Force Debt Buyers To Violate The Fair Debt Collection Practices Act, Among Other Laws.**

43.    If Debt Buyers, including Plaintiff's members, are forced to comply with Treas. Reg. § 1.6050P-2(e), they simultaneously will likely violate critical provisions of the FDCPA, 15 U.S.C. §§ 1692a-1692o, and may be liable under similar state consumer protection laws as well.

44.    The FDCPA regulates the activities of "debt collectors" who collect "debts" from "consumers," as those terms are defined in 15 U.S.C. § 1692a. Unlike Originating Lenders, who are exempt from the definition of "debt collector" as a "creditor" under Section 1692a(6)(F), Debt Buyers who purchase portfolios of delinquent Consumer Loans and subsequently attempt to collect those loans must comply with the FDCPA. The FDCPA, which is enforced by the Federal Trade Commission, but which also authorizes private enforcement actions, prohibits a debt collector from making any "false representation" of the "character, amount, or legal status of any debt." *Id.* § 1692e(2)(A). Additionally, under the FDCPA, it is a deceptive practice to (i) threaten to "take any action that cannot legally be taken or that is not intended to be taken," (ii) "communicate to any person credit information which is known or which should be known to be false" or (iii) use "any false representation or deceptive means to collect or attempt to collect any debt." *Id.* § 1692e(5), (8) and (10).

45.    The FDCPA is a strict liability statute and even a single violation of Section 1692e is sufficient to establish civil liability. *See* 15 U.S.C. § 1692k. Even in the absence of any actual damages, a debt collector can be liable to an individual consumer for statutory damages of up to $1,000, plus legal fees and costs. *Id.* §§ 1692k(a)(2)(A); 1692k(a)(3). If an FDCPA claim is brought as a class action, the debt collector can be liable for statutory class damages of up to $500,000 or one percent of the debt collector's net worth, whichever is less. *Id.*

§ 1692k(a)(3). The standard by which an alleged violation of the FDCPA will be judged is whether the "least sophisticated consumer" would tend to be deceived. *See e.g., Federal Trade Comm'n v. Capital City Mortg. Corp.*, No. CIV. A. 98-237 (JHG), 1998 WL 1469619, *5 (D.D.C. July 13, 1998) (citation omitted).

46.    Because Debt Buyers are customarily provided with only an account balance for each Consumer Loan they purchase, they usually lack a detailed breakdown of the Debt Components of those Consumer Loans. As a result, they risk for FDCPA purposes making "false representations" of the "character, amount, or legal status" of such loans by issuing and filing Forms 1099-C that contain inaccurate information. *See* 15 U.S.C. § 1692e(2)(A). In particular, because Debt Buyers are generally not furnished with the information to accurately complete Boxes 2 and 3 of Form 1099-C, they may, for example, overstate the amount of stated principal and understate the amount of unpaid interest "cancelled."

47.    In addition, if a Debt Buyer furnishes a consumer borrower with a Form 1099-C that reflects cancellation of some amount of indebtedness because one of the eight "identifiable events" under Treas. Reg. § 1.6050P-1(b)(2) has occurred, the Debt Buyer will have effectively made a representation for FDCPA purposes that such indebtedness is no longer outstanding. Under state law, however, the Debt Buyer would usually be entitled to continue collection efforts and, in the case of certain of the "identifiable events," even enforcement action. If the Debt Buyer subsequently pursued collection or enforcement of the debt (as would routinely occur in the case of certain of the "identifiable events") or sold the debt, it would be exposed to an FDCPA suit asserting that (i) it has misrepresented the character or legal status of the debt by falsely stating in the Form 1099-C that the debt was forgiven, when it was not, (ii) it threatened to take an action that it did not intend to take by falsely stating through the issuance of the Form

that it forgave the debt, (iii) it communicated to the IRS credit information that it knew to be false since it knew that the debt was not cancelled or discharged under state law, and (iv) it used a false representation or deceptive means to collect or attempt to collect a debt by falsely stating through the issuance of the Form that the debt was cancelled or discharged when it was not under state law.

48.    The threat of FDCPA litigation is a very real concern to DBA's members. Upon information and belief, the plaintiff's bar involved in FDCPA litigation has "promised" to institute class action lawsuits based upon inaccurate Forms 1099-C constituting false or misleading communications to consumer debtors. Even if such litigation is ultimately unsuccessful, these lawsuits will be costly to defend and injurious to the reputation of individual Debt Buyers and the debt buying industry as a whole.

**G.    Treasury Regulation § 1.6050P-2(e) Impermissibly Preempts State Statutes Of Limitations Relating To The Collection Of Consumer Debts.**

49.    The majority of states have statutes of limitation for collecting a debt and/or enforcing a judgment on a debt that extend beyond 36 months. *See* matrix of state statutes of limitations, incorporated herein and attached hereto as Exhibit 6. In addition, the enforcement and collection of certain Federal and state government originated obligations owed by consumers, such as student loans, is not controlled by a statute of limitations.

50.    Case law suggests that courts are willing to find debts, including judgment debts, unenforceable if the creditor, here a Debt Buyer, has issued to the debtor a Form 1099-C reporting discharge of indebtedness income. *See e.g., In re Crosby*, 261 B.R. 470 (Bankr. Ct. D. Ka. 2001) (finding creditor's claim "unenforceable" in light of creditor's issuance and filing of a Form 1099-C). *See also, Long v. Turner*, 134 F. 3d 312 (5th Cir. 1998) (finding that a debt may

be unenforceable if a debtor that has received a Form 1099-A asserts equitable estoppel and shows detrimental reliance such as the payment of Federal income taxes).

51.    One of the eight "identifiable events" that requires the issuance of a Form 1099-C under the Section 6050P regulations is the passage of 36 months without a payment from the debtor and no significant, bona fide collection activity (a concept that according to the regulations does not include automated collection letters) during the last 12 months of that 36-month period (the "36-month Rule"). *See* Treas. Reg. § 1.6050P-1(b)(2)(i)(H). The effect of the 36-month Rule in Treas. Reg. § 1.6050P-1(b)(2)(i)(H) is to impose a federally mandated three-year statute of limitations on enforcing defaulted debt given that courts are willing to find that the issuance of a Form 1099-C renders unenforceable all or a portion of the debt reflected on that Form as having been discharged.

52.    The 36-month Rule effectively preempts the rights Debt Buyers have under applicable state statutes of limitation and Federal law to enforce and collect a debt, in addition to exposing Debt Buyers to multiple and substantial damage claims under the FDCPA for representing, through the issuance of a Form 1099-C, discharge of debt that they then attempt to actually enforce and collect.

53.    Such results, in the absence of express or implied Congressional intent – which does not exist here – violate bedrock principles of federalism and comity. Treasury Regulation § 1.6050P-2(e) operates to preempt existing Federal and state law and is therefore void and unenforceable. Accordingly, for all these reasons, Debt Buyers' members are suffering actual, imminent, and irreparable harm due to the constitutional infirmities inherent in Treas. Reg. § 1.6050P-2(e).

## COUNT I
### (Request for Declaratory Relief)

54.    Plaintiff incorporates and re-alleges the allegations in paragraphs 1-53 as if fully set forth herein.

55.    The plain language of Section 6050P and its legislative history make clear that Congress never intended Section 6050P to apply to Debt Buyers, including DBA's members.

56.    Defendants exceeded their authority to promulgate interpretive regulations by extending the application of Section 6050P beyond the face of the statute, and specifically to Plaintiff's members, through the issuance of Treas. Reg. § 1.6050P-2(e).

57.    Compliance with Treas. Reg. § 1.6050P-2(e), by issuing and filing Forms 1099-C, will necessarily expose Plaintiff's members to substantial and continuing liability under the FDCPA.

58.    Application of Treas. Reg. § 1.6050P-2(e) to Plaintiff's members will effectively and impermissibly impose a Federal three-year statute of limitations on enforcement of debts, by virtue of the 36-month Rule, if the courts continue to find that the issuance of Form 1099-C is a representation to the borrower that the debt has been discharged and is, therefore, unenforceable.

WHEREFORE, Plaintiff Debt Buyers' Association, on behalf of its members, prays that this Court declare Treasury Regulation § 1.6050P-2(e) to be contrary to law, unenforceable and invalid and, as a consequence, further declare that Section 6050P of the Internal Revenue Code does not apply to Plaintiff's members.

## COUNT II
### (Request for Permanent Injunction)

59.    Plaintiff incorporates and re-alleges the allegations in paragraphs 1-58 as if fully set forth herein.

60.    Pursuant to the information reporting requirements of Section 6050P, made applicable to Debt Buyers by virtue of Treas. Reg. § 1.6050P-2(e), Plaintiff's members must furnish to each person whose debt they own and whose indebtedness was discharged during 2005 a Form 1099-C by January 31, 2006 and must file such Forms with the IRS by February 28, 2006.

61.    Because Treas. Reg. § 1.6050P-2(e) is contrary to law, it is invalid and unenforceable.

62.    Notwithstanding the unlawfulness of Treas. Reg. § 1.6050P-2(e), Plaintiff's members must, according to Defendants, by January 31, 2006 furnish to each person whose debt they own and whose indebtedness was discharged during 2005 the information required to be reported on Form 1099-C and must by February 28, 2006 file such Forms with the IRS.

WHEREFORE, Plaintiff Debt Buyers' Association, on behalf of its members, prays that this Court enjoin Defendants from enforcing Treasury Regulation § 1.6050P-2(e), and as a consequence, further enjoin Defendants from enforcing Section 6050P of the Code as against Plaintiff's members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Debt Buyers' Association, on behalf of its members, prays that this Court enter an order:

(1) declaring Treasury Regulation § 1.6050P-2(e) to be contrary to law, unenforceable and invalid;

(2) declaring Section 6050P of the Code inapplicable to members of the Debt Buyers' Association;

(3) enjoining Defendants John W. Snow, Secretary of the Treasury, and Mark W. Everson, Commissioner of the Internal Revenue, and their agents, employees, and successors, from enforcing Treasury Regulation § 1.6050P-2(e) as against Plaintiff's members;

(4) granting Plaintiff Debt Buyers' Association its costs and attorneys' fees in this action; and

(5) granting Plaintiff Debt Buyers' Association such other and further relief as the Court deems just and proper.

Respectfully submitted,

Deborah J. Israel (D.C. Bar. No. 430841)
Louis J. Rouleau (D.C. Bar No. 471654)
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street, N.W., 7th Floor
Washington, D.C. 20005
Tel: (202) 467-6900
Fax: (202) 467-6910
*Counsel for Plaintiff Debt Buyers' Association*

Of Counsel:

Howard N. Solodky, Esq.
Alida M. Dagostino, Esq.
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street, N.W., 7th Floor
Washington, D.C. 20005
Tel: (202) 467-6900
Fax: (202) 467-6910

# EXHIBIT 1

26 U.S.C.A. § 6050P

**C**
I.R.C. § 6050P

**Effective: December 31, 1999**

UNITED STATES CODE ANNOTATED
TITLE 26. INTERNAL REVENUE CODE
**SUBTITLE F--PROCEDURE AND ADMINISTRATION**
**CHAPTER 61--INFORMATION AND RETURNS**
SUBCHAPTER A--RETURNS AND RECORDS
PART III--INFORMATION RETURNS
SUBPART B--INFORMATION CONCERNING TRANSACTIONS WITH OTHER PERSONS
→**§ 6050P.** **[FN1]**Returns relating to the cancellation of indebtedness by certain entities

**(a) In general.**--Any applicable entity which discharges (in whole or in part) the indebtedness of any person during any calendar year shall make a return (at such time and in such form as the Secretary may by regulations prescribe) setting forth--

**(1)** the name, address, and TIN of each person whose indebtedness was discharged during such calendar year,

**(2)** the date of the discharge and the amount of the indebtedness discharged, and

**(3)** such other information as the Secretary may prescribe.

**(b) Exception.**--Subsection (a) shall not apply to any discharge of less than $600.

**(c) Definitions and special rules.**--For purposes of this section--

**(1) Applicable entity.**--The term "applicable entity" means--

**(A)** an executive, judicial, or legislative agency (as defined in section 3701(a)(4) of title 31, United States Code), and

**(B)** an applicable financial entity.

**(2) Applicable financial entity.**--The term "applicable entity" means--

**(A)** any financial institution described in section 581 or 591(a) and any credit union,

**(B)** the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, the National Credit Union Administration, and any other Federal executive agency (as defined in section 6050M), and any successor or subunit of any of the foregoing,

**(C)** any other corporation which is a direct or indirect subsidiary of an entity referred to in subparagraph (A) but only if, by virtue of being affiliated with such entity, such other corporation is subject to supervision and examination by a Federal or State agency which regulates entities referred to in subparagraph (A), and

**(D)** any organization a significant trade or business of which is the lending of money.

**(3) Governmental units.**--In the case of an entity described in paragraph (1)(A) or (2)(B), any return under this section shall be made by the officer or employee appropriately designated for the purpose of making such return.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

26 U.S.C.A. § 6050P

**(d) Statements to be furnished to persons with respect to whom information is required to be furnished.**-- Every applicable entity required to make a return under subsection (a) shall furnish to each person whose name is required to be set forth in such return a written statement showing--

  **(1)** the name and address of the entity required to make such return, and

  **(2)** the information required to be shown on the return with respect to such person.

The written statement required under the preceding sentence shall be furnished to the person on or before January 31 of the year following the calendar year for which the return under subsection (a) was made.

**(e) Alternative procedure.**--In lieu of making a return required under subsection (a), an agency described in subsection (c)(1)(A) may submit to the Secretary (at such time and in such form as the Secretary may by regulations prescribe) information sufficient for the Secretary to complete such a return on behalf of such agency. Upon receipt of such information, the Secretary shall complete such return and provide a copy of such return to such agency.

        **[FN1]** So in original. No section 6050O has been enacted.

Current through P.L. 109-161 (excluding P.L. 109-135, 109-148, 109-155, P.L. 109-157) approved 12-30-05


            Copr. © 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works



END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2**

Westlaw.

**C**

Treas. Reg. § 1.6050P-1

**CODE OF FEDERAL REGULATIONS**
**TITLE 26--INTERNAL REVENUE**
**CHAPTER I--INTERNAL REVENUE SERVICE,**
**DEPARTMENT OF THE TREASURY**
**SUBCHAPTER A--INCOME TAX**
**PART 1--INCOME TAXES**
**PROCEDURE AND ADMINISTRATION**
**INFORMATION AND RETURNS**
**RETURNS AND RECORDS**
**INFORMATION RETURNS**

Current through December 28, 2005; 70 FR 76935

§ 1.6050P-1 Information reporting for discharges of
indebtedness by certain entities.

(a) Reporting requirement--(1) In general. Except
as provided in paragraph (d) of this section, any
applicable entity (as defined in section 6050P(c)(1))
that discharges an indebtedness of any person (within
the meaning of section 7701(a)(1)) of at least $600
during a calendar year must file an information return
on Form 1099-C with the Internal Revenue Service.
Solely for purposes of the reporting requirements of
section 6050P and this section, a discharge of
indebtedness is deemed to have occurred, except as
provided in paragraph (b)(3) of this section, if and
only if there has occurred an identifiable event
described in paragraph (b)(2) of this section, whether
or not an actual discharge of indebtedness has
occurred on or before the date on which the
identifiable event has occurred. The return must
include the following information--

(i) The name, address, and taxpayer identification
number (TIN), as defined in section 7701(a)(41), of
each person for which there was an identifiable event
during the calendar year;

(ii) The date on which the identifiable event
occurred, as described in paragraph (b) of this
section;

(iii) The amount of indebtedness discharged, as
described in paragraph (c) of this section;

(iv) An indication whether the identifiable event
was a discharge of indebtedness in a bankruptcy, if
known; and

(v) Any other information required by Form 1099-
C or its instructions, or current revenue procedures.

(2) No aggregation. For purposes of reporting
under this section, multiple discharges of
indebtedness of less than $600 are not required to be
aggregated unless such separate discharges are
pursuant to a plan to evade the reporting
requirements of this section.

(3) Amounts not includible in income. Except as
otherwise provided in this section, discharged
indebtedness must be reported regardless of whether
the debtor is subject to tax on the discharged debt
under sections 61 and 108 or otherwise by applicable
law.

(4) Time and place for reporting--(i) In general.
Except as provided in paragraph (a)(4)(ii) of this
section, returns required by this section must be filed
with the Internal Revenue Service office designated
in the instructions for Form 1099-C on or before
February 28 (March 31 if filed electronically) of the
year following the calendar year in which the
identifiable event occurs.

(ii) Indebtedness discharged in bankruptcy.
Indebtedness discharged in bankruptcy that is
required to be reported under this section must be
reported for the later of the calendar year in which
the amount of discharged indebtedness first becomes
ascertainable, or the calendar year in which the
identifiable event occurs.

(b) Date of discharge--(1) In general. Solely for
purposes of this section, except as provided in
paragraph (b)(3) of this section, indebtedness is
discharged on the date of the occurrence of an
identifiable event specified in paragraph (b)(2) of this
section.

(2) Identifiable events--(i) In general. An
identifiable event is--

(A) A discharge of indebtedness under title 11 of
the United States Code (bankruptcy);

(B) A cancellation or extinguishment of an
indebtedness that renders a debt unenforceable in a
receivership, foreclosure, or similar proceeding in a
federal or State court, as described in section

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

368(a)(3)(A)(ii) (other than a discharge described in paragraph (b)(2)(i)(A) of this section);

(C) A cancellation or extinguishment of an indebtedness upon the expiration of the statute of limitations for collection of an indebtedness, subject to the limitations described in paragraph (b)(2)(ii) of this section, or upon the expiration of a statutory period for filing a claim or commencing a deficiency judgment proceeding;

(D) A cancellation or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the creditor's right to pursue collection of the indebtedness;

(E) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable pursuant to a probate or similar proceeding;

(F) A discharge of indebtedness pursuant to an agreement between an applicable entity and a debtor to discharge indebtedness at less than full consideration;

(G) A discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt; or

(H) The expiration of the non-payment testing period, as described in paragraph (b)(2)(iv) of this section.

(ii) Statute of limitations.  In the case of an expiration of the statute of limitations for collection of an indebtedness, an identifiable event occurs under paragraph (b)(2)(i)(C) of this section only if, and at such time as, a debtor's affirmative statute of limitations defense is upheld in a final judgment or decision of a judicial proceeding, and the period for appealing the judgment or decision has expired.

(iii) Decision to discontinue collection activity; creditor's defined policy.  For purposes of the identifiable event described in paragraph (b)(2)(i)(G) of this section, a creditor's defined policy includes both a written policy of the creditor and the creditor's established business practice.  Thus, for example, a creditor's established practice to discontinue collection activity and abandon debts upon expiration of a particular non-payment period is considered a defined policy for purposes of paragraph (b)(2)(i)(G) of this section.

(iv) Expiration of non-payment testing period. There is a rebuttable presumption that an identifiable event under paragraph (b)(2)(i)(H) of this section has occurred during a calendar year if a creditor has not received a payment on an indebtedness at any time during a testing period (as defined in this paragraph (b)(2)(iv)) ending at the close of the year.  The testing period is a 36-month period increased by the number of calendar months during all or part of which the creditor was precluded from engaging in collection activity by a stay in bankruptcy or similar bar under state or local law.    The presumption that an identifiable event has occurred may be rebutted by the creditor if the creditor (or a third-party collection agency on behalf of the creditor) has engaged in significant, bona fide collection activity at any time during the 12-month period ending at the close of the calendar year, or if facts and circumstances existing as of January 31 of the calendar year following expiration of the 36-month period indicate that the indebtedness has not been discharged.  For purposes of this paragraph (b)(2)(iv)--

(A) Significant, bona fide collection activity does not include merely nominal or ministerial collection action, such as an automated mailing;

(B) Facts and circumstances indicating that an indebtedness has not been discharged include the existence of a lien relating to the indebtedness against the debtor (to the extent of the value of the security), or the sale or packaging for sale of the indebtedness by the creditor; and

(C) In no event will an identifiable event described in paragraph (b)(2)(i)(H) of this section occur prior to December 31, 1997.

(3) Permitted reporting.    If a discharge of indebtedness occurs before the date on which an identifiable event occurs, the discharge may, at the creditor's discretion, be reported under this section.

(c) Indebtedness.  For purposes of this section and § 1.6050P-2, indebtedness means any amount owed to an applicable entity, including stated principal, fees, stated interest, penalties, administrative costs and fines.  The amount of indebtedness discharged may represent all, or only a part, of the total amount owed to the applicable entity.

(d) Exceptions from reporting requirement--(1) Certain bankruptcy discharges-- (i) In general. Reporting is required under this section in the case of a discharge of indebtedness in bankruptcy only if the creditor knows from information included in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

26 CFR § 1.6050P-1
26 C.F.R. § 1.6050P-1

reporting entity's books and records pertaining to the indebtedness that the debt was incurred for business or investment purposes as defined in paragraph (d)(1)(ii) of this section.

(ii) Business or investment debt. Indebtedness is considered incurred for business purposes if it is incurred in connection with the conduct of any trade or business other than the trade or business of performing services as an employee. Indebtedness is considered incurred for investment purposes if it is incurred to purchase property held for investment, as defined in section 163(d)(5).

(2) Interest. The discharge of an amount of indebtedness that is interest is not required to be reported under this section.

(3) Non-principal amounts in lending transactions. In the case of a lending transaction, the discharge of an amount other than stated principal is not required to be reported under this section. For this purpose, a lending transaction is any transaction in which a lender loans money to, or makes advances on behalf of, a borrower (including revolving credits and lines of credit).

(4) Indebtedness of foreign debtors held by foreign branches of U.S. financial institutions--(i) Reporting requirements. [Reserved]

(ii) Definition. An indebtedness held by a foreign branch of a U.S. financial institution is described in this paragraph (d)(4) only if--

(A) The financial institution is engaged through a branch or office in the active conduct of a banking or similar business outside the United States;

(B) The branch or office is a permanent place of business that is regularly maintained, occupied, and used to carry on a banking or similar financial business;

(C) The business is conducted by at least one employee of the branch or office who is regularly in attendance at such place of business during normal working hours;

(D) The indebtedness is extended outside of the United States by the branch or office in connection with that trade or business; and

(E) The financial institution does not know or have reason to know that the debtor is a United States person.

(5) Acquisition of indebtedness by related party. No reporting is required under this section in the case of a deemed discharge of indebtedness under section 108(e)(4) (relating to the acquisition of an indebtedness by a person related to the debtor), unless the disposition of the indebtedness by the creditor was made with a view to avoiding the reporting requirements of this section.

(6) Releases. The release of a co-obligor is not required to be reported under this section if the remaining debtors remain liable for the full amount of any unpaid indebtedness.

(7) Guarantors and sureties. Solely for purposes of the reporting requirements of this section, a guarantor is not a debtor. Thus, in the case of guaranteed indebtedness, reporting under this section is not required with respect to a guarantor, whether or not there has been a default and demand for payment made upon the guarantor.

(e) Additional rules--(1) Multiple debtors--(i) In general. In the case of indebtedness of $10,000 or more incurred on or after January 1, 1995, that involves more than one debtor, a reporting entity is subject to the requirements of paragraph (a) of this section for each debtor discharged from such indebtedness. In the case of indebtedness incurred prior to January 1, 1995, and indebtedness of less than $10,000 incurred on or after January 1, 1995, involving multiple debtors, reporting under this section is required only with respect to the primary (or first-named) debtor. Additionally, only one return of information is required under this section if the reporting entity knows, or has reason to know, that co-obligors were husband and wife living at the same address when an indebtedness was incurred, and does not know or have reason to know that such circumstances have changed at the date of a discharge of the indebtedness. This paragraph (e)(1) applies to discharges of indebtedness after December 31, 1994.

(ii) Amount to be reported. In the case of multiple debtors jointly and severally liable on an indebtedness, the amount of discharged indebtedness required to be reported under this section with respect to each debtor is the total amount of indebtedness discharged. For this purpose, multiple debtors are presumed to be jointly and severally liable on an indebtedness in the absence of clear and convincing evidence to the contrary.

(2) Multiple creditors--(i) In general. Except as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

otherwise provided in this paragraph (e)(2), if indebtedness is owned (or treated as owned for federal income tax purposes) by more than one creditor, each creditor that is an applicable entity must comply with the reporting requirements of this section with respect to any discharge of indebtedness of $600 or more allocable to such creditor. A creditor will be considered to have complied with the requirements of this section if a lead bank, fund administrator, or other designee of the creditor complies on its behalf in any reasonable manner, such as by filing a single return reporting the aggregate amount of indebtedness discharged, or by filing a return with respect to the portion of the discharged indebtedness allocable to the creditor. For purposes of this paragraph (e)(2)(i), any reasonable method may be used to determine the portion of discharged indebtedness allocable to each creditor.

(ii) Partnerships. For purposes of paragraph (e)(2)(i) of this section, indebtedness owned by a partnership is treated as owned by the partners.

(iii) Pass-through securitized indebtedness arrangement--(A) Reporting requirements. [Reserved]

(B) Definition. For purposes of this paragraph (e)(2)(iii), a pass-through securitized indebtedness arrangement is any arrangement whereby one or more debt obligations are pooled and held for twenty or more persons whose interests in the debt obligations are undivided co-ownership interests that are freely transferrable. Co-ownership interests that are actively traded personal property (as defined in § 1.1092(d)-1) are presumed to be freely transferrable and held by twenty or more persons.

(iv) REMICs. [Reserved]

(v) No double reporting. If multiple creditors are considered to hold interests in an indebtedness for purposes of this paragraph (e)(2) by virtue of holding ownership interests in an entity, and the entity is required to report a discharge of that indebtedness under paragraph (e)(5) of this section, then the multiple creditors are not required to report the discharge of indebtedness.

(3) Coordination with reporting under section 6050J. If, in the same calendar year, a discharge of indebtedness reportable under section 6050P occurs in connection with a transaction also reportable under section 6050J (relating to foreclosures and abandonments of secured property), an applicable

entity need not file both a Form 1099-A and a Form 1099-C with respect to the same debtor. The filing requirements of section 6050J will be satisfied with respect to a borrower if, in lieu of filing Form 1099-A, a Form 1099-C is filed in accordance with the instructions for the filing of that form. This paragraph (e)(3) applies to discharges of indebtedness after December 31, 1994.

(4) Direct or indirect subsidiary. For purposes of section 6050P(c)(2)(C), the term direct or indirect subsidiary means a corporation in a chain of corporations beginning with an entity described in section 6050P(c)(2)(A), if at least 50 percent of the total combined voting power of all classes of stock entitled to vote, or at least 50 percent of the total value of all classes of stock, of such corporation is directly owned by the entity described in section 6050P(c)(2)(A), or by one or more other corporations in the chain.

(5) Entity formed or availed of to hold indebtedness. Notwithstanding § 1.6050P-2(b)(3), if an entity (the transferee entity) is formed or availed of by an applicable entity (within the meaning of section 6050P(c)(1)) for the principal purpose of holding indebtedness acquired (including originated) by the applicable entity, then, for purposes of section 6050P(c)(2)(D), the transferee entity has a significant trade or business of lending money.

(6) Use of magnetic media. Any return required under this section must be filed on magnetic media to the extent required by section 6011(e) and the regulations thereunder. A failure to file on magnetic media when required constitutes a failure to file an information return under section 6721. Any person not required by section 6011(e) to file returns on magnetic media may request permission to do so under applicable regulations and revenue procedures.

(7) TIN solicitation requirement--(i) In general. For purposes of reporting under this section, a reasonable effort must be made to obtain the correct name/taxpayer identification number (TIN) combination of a person whose indebtedness is discharged. A TIN obtained at the time an indebtedness is incurred satisfies the requirement of this section, unless the entity required to file knows that such TIN is incorrect. If the TIN is not obtained prior to the occurrence of an identifiable event, it must be requested of the debtor for purposes of satisfying the requirement of this paragraph (e)(7).

(ii) Manner of soliciting TIN. Solicitations made in the manner described in § 301.6724-1(e)(1)(i) and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(2) of this chapter will be deemed to have satisfied the reasonable effort requirement set forth in paragraph (e)(7)(i) of this section. A TIN solicitation made after the occurrence of an identifiable event must clearly notify the debtor that the Internal Revenue Service requires the debtor to furnish its TIN, and that failure to furnish such TIN may subject the debtor to a $50 penalty imposed by the Internal Revenue Service. A TIN provided under this section is not required to be certified under penalties of perjury.

(8) Recordkeeping requirements. Any applicable entity required to file a return with the Internal Revenue Service under this section must also retain a copy of the return, or have the ability to reconstruct the data required to be included on the return under paragraph (a)(1) of this section, for at least four years from the date such return is required to be filed under paragraph (a)(4) of this section.

(9) No multiple reporting. If discharged indebtedness is reported under this section, no further reporting under this section is required for the amount so reported, notwithstanding that a subsequent identifiable event occurs with respect to the same amount. Further, no additional reporting or Form 1099-C correction is required if a creditor receives a payment of all or a portion of a discharged indebtedness reported under this section for a prior calendar year.

(f) Requirement to furnish statement--(1) In general. Any applicable entity required to file a return under this section must furnish to each person whose name is shown on such return a written statement that includes the following information--

(i) The information required by paragraph (a)(1) of this section;

(ii) The name, address, and TIN of the applicable entity required to file a return under paragraph (a) of this section;

(iii) A legend identifying the statement as important tax information that is being furnished to the Internal Revenue Service; and

(iv) Any other information required by Form 1099-C or its instructions, or current revenue procedures.

(2) Furnishing copy of Form 1099-C. The requirement to provide a statement to the debtor will be satisfied if the applicable entity furnishes copy B of the Form 1099-C or a substitute statement that complies with the requirements of the current revenue procedure for substitute Forms 1099.

(3) Time and place for furnishing statement. The statement required by this paragraph (f) must be furnished to the debtor on or before January 31 of the year following the calendar year in which the identifiable event occurs. The statement will be considered furnished to the debtor if it is mailed to the debtor's last known address.

(g) Penalties. For penalties for failure to comply with the requirements of this section, see sections 6721 through 6724.

(h) Effective dates--(1) In general. The rules in this section apply to discharges of indebtedness after December 21, 1996, except paragraphs (e)(1) and (e)(3) of this section, which apply to discharges of indebtedness after December 31, 1994 and, except paragraph (e)(5) of this section, which applies to discharges of indebtedness occurring after December 31, 2004.

(2) Earlier application. Notwithstanding the provisions of paragraph (h)(1) of this section, an applicable financial entity may, at its discretion, apply any of the provisions of this section to any discharge of indebtedness occurring on or after January 1, 1996, and before December 22, 1996.

[T.D. 8654, 61 FR 268, Jan. 4, 1996; T.D. 8895, 65 FR 50408, Aug. 18, 2000; T.D. 9160, 69 FR 62186, Oct. 25, 2004]

<General Materials (GM) - References, Annotations, or Tables>

26 C. F. R. § 1.6050P-I

26 CFR § 1.6050P-I

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

26 CFR § 1.6050P-2                                                        Page 1
26 C.F.R. § 1.6050P-2

C
Treas. Reg. § 1.6050P-2

### CODE OF FEDERAL REGULATIONS
### TITLE 26--INTERNAL REVENUE
### CHAPTER I--INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY
### SUBCHAPTER A--INCOME TAX
### PART 1--INCOME TAXES
### PROCEDURE AND ADMINISTRATION
### INFORMATION AND RETURNS
### RETURNS AND RECORDS
### INFORMATION RETURNS

Current through December 28, 2005; 70 FR 76935

§ 1.6050P-2 Organization a significant trade or business of which is the lending of money.

(a) In general. For purposes of section 6050P(c)(2)(D), the lending of money is a significant trade or business of an organization in a calendar year if the organization lends money on a regular and continuing basis during the calendar year.

(b) Safe harbors--(1) Organizations not subject to section 6050P in the previous calendar year. For an organization that was not required to report under section 6050P in the previous calendar year, the lending of money is not treated as a significant trade or business for the calendar year in which the lending occurs if gross income from lending money (as described in paragraph (d) of this section) in the organization's most recent test year (as defined in paragraph (f) of this section) is both less than $5 million and less than 15 percent of the organization's gross income for that test year.

(2) Organizations that were subject to section 6050P in the previous calendar year. For an organization that was required to report under section 6050P for the previous calendar year, the lending of money is not treated as a significant trade or business for the calendar year in which the lending occurs if gross income from lending money (as described in paragraph (d) of this section) in each of the organization's three most recent test years is both less than $3 million and less than 10 percent of the organization's gross income for that test year.

(3) No test year. The lending of money is not treated as a significant trade or business for an

organization for the calendar year in which the lending occurs if the organization does not have a test year for that calendar year.

(c) Seller financing. If the principal trade or business of an organization is selling nonfinancial goods or providing nonfinancial services and if the organization extends credit to the purchasers of those goods or services to finance the purchases, then, for purposes of section 6050P(c)(2)(D), these extensions of credit are not a significant trade or business of lending money.

(d) Gross income from lending of money. For purposes of this section, gross income from lending of money includes--

(1) Income from interest, including qualified stated interest, original issue discount, and market discount;

(2) Gains arising from the sale or other disposition of indebtedness;

(3) Penalties with respect to indebtedness (whether or not the penalty is interest for Federal tax purposes); and

(4) Fees with respect to indebtedness, including merchant discount or interchange (whether or not the fee is interest for Federal tax purposes).

(e) Acquisition of an indebtedness from a person other than the debtor included in lending money. For purposes of this section, lending money includes acquiring an indebtedness not only from the debtor at origination but also from a prior holder of the indebtedness. Gross income arising from indebtedness is gross income from the lending of money without regard to who originated the indebtedness. If an organization acquires an indebtedness, the organization is required to report any cancellation of the indebtedness if the organization is engaged in a significant trade or business of lending money.

(f) Test year. For any calendar year, a test year is a taxable year of the organization that ends before July 1 of the previous calendar year.

(g) Predecessor organization. If an organization acquires substantially all of the property that was used in a trade or business of some other organization

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

26 CFR § 1.6050P-2
26 C.F.R. § 1.6050P-2

(the predecessor) (including when two or more corporations are parties to a merger agreement under which the surviving corporation becomes the owner of the assets and assumes the liabilities of the absorbed corporation(s)) or was used in a separate unit of the predecessor, then whether the organization at issue qualifies for one of the safe harbors in paragraph (b) of this section is determined by also taking into account the test years, reporting obligations, and gross income of the predecessor.

(h) Examples. The rules of this section are illustrated by the following examples:

Example 1. (i) Facts. Finance Company A, a calendar year taxpayer, was formed in Year 1 as a non-bank subsidiary of Manufacturing Company and has no predecessor. A lends money to purchasers of Manufacturing Company's products on a regular and continuing basis to finance the purchase of those products. A's gross income from stated interest in Year 1 is $4.7 million. In Year 1, A's gross income from fees and penalties with respect to the indebtedness is $0.5 million, and A has no other gross income from lending money within the meaning of paragraph (d) of this section.

(ii) Results. Section 6050P does not require A to report discharges of indebtedness occurring in Years 1 or 2, because A has no test year for those years. Notwithstanding that A lends money in those years on a regular and continuing basis, under paragraph (b)(3) of this section, A does not have a significant trade or business of lending money in those years for purposes of section 6050P(c)(2)(D). However, for Year 3, A's test year is Year 1. A's gross income from lending in Year 1 is not less than $5 million for purposes of the applicable safe harbor of paragraph (b)(1) of this section. Because A lends money on a regular and continuing basis and does not meet the applicable safe harbor, section 6050P requires A to report discharges of indebtedness occurring in Year 3.

Example 2. (i) Facts. The facts are the same as in Example 1, except that A is a division of Manufacturing Company, rather than a separate subsidiary. Manufacturing Company's principal activity is the manufacture and sale of non-financial products, and, other than financing the purchase of those products, Manufacturing Company does not extend credit or otherwise lend money.

(ii) Results. Under paragraph (c) of this section, that financing activity is not a significant trade or business of lending money for purposes of section

6050P(c)(2)(D), and section 6050P does not require Manufacturing Company to report discharges of indebtedness.

Example 3. (i) Facts. Company B, a calendar year taxpayer, is formed in Year 1. B has no predecessor and a part of its activities consists of the lending of money. B packages and sells part of the indebtedness it originates and holds the remainder. B is engaged in these activities on a regular and continuing basis. For Year 1, the sum of B's gross income from sales of the indebtedness, plus other income described in paragraph (d) of this section, is only $4.8 million, but it is 16% of B's gross income in Year 1.

(ii) Results. Because B lends money on a regular and continuing basis and does not meet the applicable safe harbor of paragraph (b)(1) of this section, section 6050P requires B to report discharges of indebtedness occurring in Year 3. B is not required to report discharges of indebtedness in Years 1 and 2 because B has no test year for Years 1 and 2.

Example 4. (i) Facts. The facts are the same as in Example 3. In addition, in each of Years 2, 3, and 4, the sum of B's gross income from sales of the indebtedness, plus other income described in paragraph (d) of this section, is less than both $3 million and 10% of B's gross income.

(ii) Results. (A) Because B was required to report under section 6050P for Year 3, the applicable safe harbor for Year 4 is paragraph (b)(2) of this section, which is satisfied only if B's gross income from lending activities for each of the three most recent test years is less than both $3 million and 10% of B's gross income. For Year 4, even though B has only two test years, Year 1, causes B to fail to meet this safe harbor. Accordingly, B is required to report discharges of indebtedness under section 6050P in Year 4. For Year 5, B's three most recent test years are Years 1, 2, and 3. However, B's gross income from lending activities in Year 1 is not less than $3 million and 10% of B's gross income. Accordingly, section 6050P requires B to report discharges of indebtedness in Year 5.

(B) For Year 6, B satisfies the applicable safe harbor requirements of paragraph (b)(2) of this section for each of the three most recent test years (Years 2, 3, and 4). Therefore, section 6050P does not require B to report discharges of indebtedness in Year 6. Because B is not required to report for Year 6, the applicable safe harbor for Year 7 is the one contained in paragraph (b)(1) of this section, and thus

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the only relevant test year is Year 5.

Example 5. (i) Facts. (A) Company C, a calendar year taxpayer, was formed in Year 1 and, on a regular and continuing basis, enters into the following transactions with its clients, all of whom are unrelated parties to C.  C does not have any other income.

(B) C's clients sell goods to customers, frequently accepting as payment accounts receivable that are due in 30 to 90 days. Under a contract with each client, C investigates the creditworthiness of the client's customers with respect to the prospective sales, and, for each customer, C determines whether, and to what extent, C is willing to assume the risk of loss on accounts receivable to be issued by the customer. C's decision whether to assume risk of loss may be based on an evaluation of the credit quality of particular customers or on the aggregate credit quality of all of the client's prospective customers. If C is unwilling to assume the risk, the client either may refuse to extend any credit to the customer or may accept the account receivable and bear the risk of loss.

(C) Pursuant to some contracts between C's clients and C, C's clients assign legal title to the accounts receivable to C when the accounts receivable are issued by the customers.   For these accounts receivable, C agrees to undertake collections and to remit the amounts collected to the client, less a fee of 0.70 percent of the face value of the accounts receivable.  Pursuant to other contracts between C's clients and C, C's clients retain legal title to the accounts receivable and retain the initial collection responsibility.  For these accounts receivable, C's fee is reduced to 0.35 percent. Both groups of accounts receivable include accounts receivable for which C has assumed the risk of loss and accounts receivable for which C has not assumed the risk of loss.

(D) Based on all the facts and circumstances, C acquires ownership for Federal tax purposes of some, but not all, of the accounts receivable that it has agreed to collect and of some, but not all, of the accounts receivable for which the client has retained collection responsibility.

(E) In Year 1, C's total fee income with respect to accounts receivable of which it acquired tax ownership was $2 million. C's fee income in Year 1 from accounts receivable of which it did not acquire tax ownership was $700,000. C does not have any other income for Year 1.

(F) In Year 3, there were discharges of $950,000, representing $100,000 of customer defaults on those accounts receivable of which C was the owner for Federal tax purposes at the time of the identifiable event marking the discharge and $850,000 of customer defaults on the accounts receivable of which the clients, and not C, were the owner. Whenever C determined the uncollectibility of an account receivable for which it had not assumed the risk of loss, C reassigned title to the account receivable to the appropriate client. Each defaulting customer defaulted on an account receivable with an outstanding balance of at least $600.

(ii) Results. (A) For Year 3, C's test year is Year 1. Under paragraph (e) of this section, C's $2 million fee income from the accounts receivable of which it acquired tax ownership is "gross income from lending money" for purposes of paragraph (b) of this section, because C was the owner of the accounts for Federal tax purposes.  Under paragraph (e) of this section, C's $700,000 fee income from the accounts receivable of which it did not acquire tax ownership is not "gross income from lending money" for purposes of paragraph (b) of this section, because C was not the owner of the accounts receivable for Federal tax purposes. In Year 1, therefore, C's gross income from lending money is less than $5 million but is not less than 15% of C's gross income. Because C lends money on a regular and continuing basis and does not meet the applicable safe harbor, section 6050P requires C to report discharges of indebtedness occurring in Year 3.

(B) In Year 3, section 6050P requires C to report the $100,000 of discharges of the accounts receivable of which C was the owner for Federal tax purposes at the time of the identifiable event marking the discharge.  Unless an exception to reporting under paragraph (b) or (c) of this section applies, section 6050P requires C's clients to report the $850,000 of discharges of the accounts receivable of which C did not become the owner.

(i) Effective date.    This section applies to discharges of indebtedness occurring on or after January 1, 2005.

[T.D. 9160, 69 FR 62186, Oct. 25, 2004]

<General Materials (GM) - References, Annotations, or Tables>

26 C. F. R. § 1.6050P-2

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 3**

# ¶152,291. Prop Regs. 6/13/2002. Fed. Reg. Vol. 67, No. 114, p. 40629.

[REG-107524-00]
**Guidance Under Section 6050P Regarding Cancellation of Indebtedness** Reg. §§1.6050P-0, 1.6050P-1, 1.6050P-2

**Caution:** This Notice of Proposed Rulemaking was finalized by TD 9160, 10/22/2004.

## Background

This document contains proposed amendments to the Income Tax Regulations (26 CFR part 1) defining an organization a significant trade or business of which is the lending of money under section 6050P(c)(2)(D). Section 6050P(c)(2)(D) was enacted by section 553(a) of the Ticket to Work and Work Incentives Improvement Act of 1999, Public Law 106-170, 113 Stat. 1860, 1931 (1999) ("the Act"), effective for discharges of indebtedness occurring after December 31, 1999. Generally, section 6050P (a) requires organizations that are subject to that section (applicable entities) to file returns with the Service and to provide statements to persons whose names are required to be shown on the returns ("payees"), setting forth certain information regarding discharges of indebtedness of $600 or more. Section 553(a) of the Act amended section 6050P of the Code by expanding the types of entities that are required to report discharges of indebtedness to include any organization "a significant trade or business of which is the lending of money." Notice 2000-22, 2000-16 I.R.B. 902, April 17, 2000, provides that penalties under sections 6721 and 6722 will not be imposed on the lending organizations newly required to report discharges of indebtedness for failures to report discharges of indebtedness occurring before January 1, 2001. In addition, Notice 2001-8, 2001-4 I.R.B. 374, January 22, 2001, extended that suspension of penalties for failures to file information returns for any discharge of indebtedness that occurs prior to the first calendar year beginning at least two months after the date that appropriate guidance is issued.

This document also contains proposed amendments to the Income Tax Regulations (26 CFR part 1) conforming the existing regulations under section 6050P to statutory changes made by the Debt Collection Improvement Act of 1996.

## Explanation of Provisions

Under section 6050P(c)(2)(D), any organization "a significant trade or business of which is the lending of money" is required to report discharges of indebtedness. These proposed regulations provide guidance on when a trade or business is the lending of money and when that trade or business is significant. In general, the proposed regulations provide that the lending of money is a significant trade or business if money is lent on a regular and continuing basis. The regulations provide three safe harbors under which organizations will not be considered to have a significant trade or business of lending money. The IRS and the Treasury Department believe that these safe harbors satisfy the information reporting objectives of the statute while minimizing the administrative burden on taxpayers.

The first safe harbor applies to organizations that were not required to report under section 6050P in the previous calendar year. Such an organization will be considered not to have a significant trade or business of lending money for the calendar year if its gross income from lending money in the most recent test year (the most recent taxable year ending before July 1 of the previous calendar year) is less than both 15 percent of the organization's gross income and $5 million.

The second safe harbor applies to organizations that were required to report under section 6050P for the previous calendar year. Such an organization will be considered not to have a significant trade or business of lending money for the calendar year if, for each of the three most recent test years, its gross income from lending money is less than both 10 percent of the organization's gross income and $3 million. The IRS and the Treasury Department believe that a stricter safe harbor is appropriate for taxpayers that have been subject to section 6050P in a prior year and, therefore, presumably have systems in place to comply with the information reporting requirements of the statute.

The third safe harbor applies to certain newly formed organizations. Except for an entity that is formed or availed of for the principal purpose of holding loans acquired by an applicable entity (as defined in section 6050P), an organization that does not have a test year is considered not to have a significant trade or business of lending money even if the organization lends money on a regular and continuing basis. This safe harbor and the use of a "test year" in determining whether a taxpayer fits within the other safe harbors provides taxpayers with some advance notice (i.e., at least six months) of whether they will need to establish systems to track and report discharges of indebtedness.

In addition to the safe harbors discussed above, the proposed regulations provide a general exception to information reporting for entities whose principal trade or business is the sale of nonfinancial goods or the provision of nonfinancial services. Such entities are not considered to have a significant trade or business of lending money with respect to lending or credit extended in connection with the purchase by customers of those goods and services. This is consistent with the legislative history, which indicates that, in amending section 6050P, Congress was concerned with credit card and finance companies. S. Rpt. No. 201, 106th Cong., 1st Sess. 28 (1999). The IRS and the Treasury Department believe that Congress did not mean to extend the reporting requirement to retailers and other entities who extend credit to customers in connection with the purchase of nonfinancial goods and services. However, consistent with applying the tests under section 6050P on an entity-by-entity basis, this exception is not available to a separate financing subsidiary of such a retailer. In addition, if such a retailer is subject to section 6050P regardless of its accounts receivable, it is required to report discharges of indebtedness of accounts receivable as well as other debt.

The proposed regulations also provide that, for purposes of section 6050P(c)(2)(D), lending money includes acquiring a loan, and gross income arising from that loan is gross income from lending money. Therefore, an organization that buys and holds loans is treated as an organization that lends money. This is consistent with the temporary regulations under section 6050J (relating to information returns for acquisitions and abandonments of property that is security for indebtedness). See §1.6050J-1T, Q&A-22.

Finally, the proposed regulations amend §1.6050P-1 to provide a new rule applicable to all entities subject to section 6050P, not just those newly made subject to section 6050P by the 1999 amendment. The current regulations under section 6050P (§1.6050P-1(e)(2)) contain rules respecting the reporting requirements of debtors when indebtedness is owned by more than one creditor. Each creditor that is an applicable entity is required to report with respect to any discharge of indebtedness of $600 or more allocable to that creditor. For purposes of this rule, indebtedness owned by a partnership is treated as owned by the partners, with the result that reporting may be required of the partners with respect to a cancellation of debt held by the partnership. Rules respecting compliance with this pass-through reporting requirement by holders of interests in certain pass-through securitized indebtedness arrangements and REMICs were reserved. §1.6050P-1(e)(2)(iii) & (iv). The preamble to those regulations states that penalties will not be imposed for nonreporting by holders of interests in these entities.

Conceivably, an entity that otherwise would be required to report under section 6050P with respect to its debt (for example, an entity that regularly and continuously lends money and does not meet the safe harbors of these proposed regulations), could transfer debt that it originates to a special purpose subsidiary or trust in a single transaction. Through this structure, the originator could possibly avoid application of section 6050P by arguing that the reservation of rules in the regulations for pass-through securitized indebtedness arrangements absolves them of any reporting obligation and that the transferee entity does not meet the requirements of regular and continuous lending activity.

To address the foregoing concern, the amendment to §1.6050P-1 by the proposed regulations provides that an entity formed or availed of by an applicable entity for the principal purpose of holding loans acquired or originated by the applicable entity is treated as having a significant trade or business of lending money. Accordingly, the transferee entity itself is treated as an applicable entity for purposes of section 6050P(c)(2)(D). If the entity formed or availed of by the applicable entity is a REMIC or a pass-through securitized indebtedness arrangement as defined in §1.6050P-1(e)(2)(iii)(B), the REMIC or pass-through securitized indebtedness arrangement will be treated as an applicable entity for purposes of section 6050P(c)(2)(D), despite the reservation in §1.6050P-1(e)(2)(iii) and (iv) of the application of section 6050P to holders of interests in REMICs and pass-through securitized indebtedness arrangements.

## Proposed Effective Date

The regulations, as proposed, apply to any discharge of indebtedness occurring in any calendar year beginning at least two months after the date that the final regulations are published in the Federal Register. Regardless of when the final regulations are made effective, the rules in these proposed regulations may be relied on for prior taxable periods.

## Special Analyses

It has been determined that this notice of proposed rulemaking is not a significant regulatory action as defined in Executive Order 12866. Therefore, a regulatory assessment is not required. It has also been determined that section 553(b) of the Administrative Procedure Act (5 U.S.C. chapter 5) does not apply to these regulations, and because the regulation does not impose a collection of information on small entities, the Regulatory Flexibility Act (5 U.S.C. chapter 6) does not apply. The information collection referenced in this proposed rule (Form 1099-C) has been previously reviewed and approved by the Office of Management and Budget under OMB Control Number 1545-1424. An agency may not collect or sponsor the collection of information unless it displays a valid OMB Control Number. Pursuant to section 7805(f) of the Code, this notice of proposed rulemaking will be submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on its impact on small business.

## Comments and Public Hearing

Before these proposed regulations are adopted as final regulations, consideration will be given to any electronic or written comments (a signed original and eight (8) copies) that are submitted timely to the IRS. The IRS and Treasury Department request comments on the clarity of the proposed rules and how they can be made easier to understand. All comments will be available for public inspection and copying.

A public hearing has been scheduled for October 8, 2002, beginning at 10 a.m. in Room 4718 of the Internal Revenue Building, 1111 Constitution Avenue, NW., Washington, DC. Because of access restrictions, visitors must enter at the main entrance, located at 1111 Constitution Avenue, NW. All visitors must present photo identification to enter the building. Because of access restrictions, visitors will not be admitted beyond the immediate entrance area more than 30 minutes before the hearing starts. For information about having your name placed on the building access list to attend the hearing, see the FOR FURTHER INFORMATION CONTACT portion of this preamble.

The rules of 26 CFR 601.601(a)(3) apply to the hearing. Persons who wish to present oral comments must submit electronic or written comments and an outline of the topic to be discussed and time to be devoted to each topic (preferably a signed original and eight (8) copies) by September 17, 2002. A period of 10 minutes will be allotted to each person for making comments. An agenda showing the scheduling of the speakers will be prepared after the deadline for receiving outlines has passed. Copies of the agenda will be available free of charge at the hearing.

## Drafting Information

The principal author of these proposed regulations is Sharon L. Hall, Office of Associate Chief Counsel (Income Tax & Accounting). However, other personnel from the IRS and Treasury Department participated in their development.

## List of Subjects 26 CFR Part 1

Income taxes, Reporting and recordkeeping requirements.

## Proposed Amendment to the Regulations

Accordingly, 26 CFR part 1 is proposed to be amended as follows:

# 1. INCOME TAXES

PAR. 1 The authority citation for part 1 is amended by adding an entry in numerical order to read as follows:

26 U.S.C. 7805 ***

Section 1.6050P-1 and 1.6050P-2 also issued under 26 U.S.C. 6050P. ***

PAR. 2 Section 1.6050P-0 is amended as follows:

1. The introductory text is amended by adding the language "and §1.6050P-2" immediately after the language "Sec. 1.6050P-1".

2. The heading for §1.6050P-1 is amended by removing the word "financial".

3. The entry for §1.6050P-1(e)(2)(v) is added.

4. The entries for Secs. 1.6050P-1(e)(5) through (e)(8) are redesignated as entries for §§1.6050P-1(e)(6) through (e)(9) and a new entry for §1.6050P-1(e)(5) is added.

5. The entries for §1.6050P-2 are added.

The additions read as follows:

**Prop Reg § 1.6050P-0. Table of contents.**

**Caution:** This Notice of Proposed Rulemaking was finalized by TD 9160, 10/22/2004.

(1.6050P-1) Information reporting for discharges of indebtedness for certain entities.

*****

(e)

*****

(2) ***

(v) No double reporting.

*****

(5) Entity formed or availed of to hold indebtedness.

*****

(1.6050P-2) Organizations a significant trade or business of which is the lending of money.

(a) In general.

(b) Safe harbors.

(1) Organizations not subject to section 6050P in the previous calendar year.

(2) Safe harbor for organizations that were subject to section 6050P in the previous calendar year.

(3) No test year.

(c) Seller financing.

(d) Gross income from lending of money.

(e) Acquisition of indebtedness by subsequent holder.

(f) Test year.

(g) Predecessor organization.

(h) Examples.

(i) Effective date.

PAR. 3 Section 1.6050P-1 is amended as follows:

1. The heading for §1.6050P-1 is amended by removing the word "financial".

2. Paragraphs (a)(1), (b)(2)(i)(F), (c), (e)(2)(i), (e)(3), (e)(7), (f)(1) introductory text, (f)(1)(ii) and (f)(2) are amended by removing the word "financial".

3. The first sentence of paragraph (c) is amended by adding "and section 1.6050P-2" immediately after the word "section".

4. Paragraph (e)(2)(v) is added.

5. Paragraph (e)(4) is amended by removing "6050P(c)(1)(A)" each time it appears and adding "6050P (c)(2)(A)" in its place and by removing "6050P(c)(1)(C)" and adding "6050P(c)(2)(C)" in its place.

6. Paragraphs (e)(5) through (e)(8) are redesignated as paragraphs (e)(6) through (e)(9) and a new paragraph (e)(5) is added.

7. Paragraph (e)(7)(i), as redesignated, is amended by removing "(e)(6)" where it appears and adding "(e)(7)" and paragraph (e)(7)(ii), as redesignated, is amended by removing "(e)(6)(i)" where it appears and adding "(e)(7)(i)" in its place.

8. Paragraph (h)(1) is amended by adding "and except paragraph (e)(5) of this section, which applies to discharges of indebtedness occurring in any calendar year beginning at least two months after the date that the final regulations are published in the Federal Register.", immediately after the language "1994".

The additions read as follows:

**Prop Reg § 1.6050P-1. Information reporting for discharges of indebtedness by certain entities.**

**Caution:** This Notice of Proposed Rulemaking was finalized by TD 9160, 10/22/2004.

*****

$^{w\frac{N}{5}\epsilon}$(e) ***

$^{w\frac{N}{5}\epsilon}$(2) ***

$^{w\frac{N}{5}\epsilon}$(v) No double reporting. If multiple creditors are considered to hold interests in an indebtedness under paragraph (e)(2) of this section, and an entity is required to report a discharge of that indebtedness under paragraph (e)(5) of this section, then such multiple creditors are not required to report the discharge of indebtedness.

*****

$^{w\frac{N}{5}\epsilon}$(5) *Entity formed or availed of to hold indebtedness.* Notwithstanding §1.6050P-2(b) (3), if an entity (the transferee entity) is formed or availed of by an applicable entity (within the meaning of section 6050P(c)(1)) for the principal purpose of holding indebtedness acquired (including originated) by the applicable entity, then, for purposes of section 6050P(c)(2)(D), the transferee entity has a significant trade or business of lending money.

*****

PAR. 4 A new §1.6050P-2 is added as follows:

**Prop Reg § 1.6050P-2. Organization a significant trade or business of which is the lending of money.**

**Caution:** This Notice of Proposed Rulemaking was finalized by TD 9160, 10/22/2004.

$^{w\frac{N}{5}\epsilon}$(a) **In general.** For purposes of section 6050P(c)(2)(D), the lending of money is a significant trade or business of an organization in a calendar year if the organization lends money on a regular and continuing basis during the calendar year.

$^{w\frac{N}{5}\epsilon}$(b) **Safe harbors.**

$^{w\frac{N}{5}\epsilon}$(1) *Organizations not subject to section 6050P in the previous calendar year.* For an organization that was not required to report under section 6050P in the previous calendar year, the lending of money will not be treated as a significant trade or business for the calendar year in which the lending occurs if gross income from lending money in the organization's most recent test year (as defined in paragraph (f) of this section) is both

less than $5 million and less than 15 percent of the organization's gross income for that test year.

*(2) Organizations that were subject to section 6050P in the previous calendar year.* For an organization that was required to report under section 6050P for the previous calendar year, the lending of money will not be treated as a significant trade or business for the calendar year in which the lending occurs if gross income from lending money in each of the organization's three most recent test years is both less than $3 million and less than 10 percent of the organization's gross income for that test year.

*(3) No test year.* The lending of money will not be treated as a significant trade or business for an organization for the calendar year in which the lending occurs if the organization does not have a test year for that calendar year.

**(c) Seller financing.** If the principal trade or business of an organization is selling nonfinancial goods or providing nonfinancial services and if the organization extends credit to the purchasers of those goods or services in order to finance the purchases, then, for purposes of section 6050P(c)(2)(D), these extensions of credit are not a significant trade or business of lending money.

**(d) Gross income from lending of money.** For purposes of this section, gross income from lending of money includes income from interest, fees, penalties, merchant discount, interchange and gains arising from the sale of an indebtedness.

**(e) Acquisition of indebtedness by subsequent holder.** For purposes of this section, lending money includes acquiring an indebtedness, and gross income arising from such an acquired indebtedness is treated as gross income from lending money, without regard to whether the indebtedness was originated by either an applicable entity or a related party.

**(f) Test year.** For any calendar year, a test year is a taxable year of the organization that ends before July 1 of the previous calendar year.

**(g) Predecessor organization.** If an organization acquires substantially all of the property that was used in a trade or business of some other organization (the predecessor) (including when two or more corporations are parties to a merger agreement under which the surviving corporation becomes the owner of all the assets and assumes all the liabilities of the absorbed corporations(s)) or was used in a separate unit of the predecessor, then whether the organization at issue qualifies for one of the safe harbors in paragraph (b) of this section is determined by also taking into account the test years, reporting obligations, and gross income of the predecessor.

**(h) Examples.** The rules of this section are illustrated by the following examples.

*Example (1).* Finance Company A, a calendar year taxpayer, was formed in Year 1 as a non-bank subsidiary of Manufacturing Company and has no predecessor. A lends money to purchasers of Manufacturing Company's products on a regular and continuing basis to finance the purchase of those products. A's gross income from interest in Year 1 is $4.7 million. A's gross income from fees and penalties related to the lending activity in Year 1 is $.5 million. Section 6050P does not require A to report discharges of indebtedness occurring in Years 1 or 2, because A has no test year for those years. Notwithstanding that A lends money in those years on a regular and continuing basis, under paragraph (b)(3) of this section, A does not have a significant trade or business of lending money in those years for purposes of section 6050P(c)(2)(D). However, for Year 3, A's test year is Year 1. A's gross income from lending in Year 1 is not less than $5 million

for purposes of the applicable safe harbor of paragraph (b)(1) of this section. Because A lends money on a regular and continuing basis and does not meet the applicable safe harbor, section 6050P requires A to report discharges of indebtedness occurring in Year 3.

*Example (2).* The facts are the same as in Example 1, except that A is a division of Manufacturing Company, rather than a separate subsidiary. Manufacturing Company's principal activity is the manufacture and sale of non-financial products, and other than financing the purchase of those products Manufacturing Company does not extend credit or otherwise lend money. Accordingly, under paragraph (c) of this section, that financing activity is not a significant trade or business of lending money for purposes of section 6050P(c)(2)(D), and section 6050P does not require Manufacturing Company to report discharges of indebtedness.

*Example (3).* Company B, a calendar year taxpayer, is formed in Year 1. B has no predecessor and a part of its activities consists of the lending of money. B packages and sells part of the indebtedness it originates and holds the remainder. B is engaged in these activities on a regular and continuing basis. For Year 1, B's gross income from sales of the indebtedness, combined with interest income, fees, and penalties related to the lending activity is only $4.8 million, but it is 16% of B's gross income in Year 1. Because B lends money on a regular and continuing basis and does not meet the applicable safe harbor of paragraph (b)(1) of this section, section 6050P requires B to report discharges of indebtedness occurring in Year 3. B is not required to report discharges of indebtedness in years 1 and 2 because B has no test year for years 1 and 2.

*Example (4).* The facts are the same as in Example 3. In addition, in each of Years 2, 3, and 4, B's gross income from sales of the indebtedness combined with interest income, fees, and penalties related to the lending activity is less than both $3 million and 10% of B's gross income. Because B was required to report under section 6050P for Year 3, the applicable safe harbor for Year 4 is paragraph (b)(2) of this section, which is satisfied only if B's gross income from lending activities for each of the three most recent test years is less than both $3 million and 10% of B's gross income. For Year 4, even though B has only two test years, B's gross income in one of those test years, Year 1, causes B to fail to meet this safe harbor. Accordingly, B is required to report discharges of indebtedness under section 6050P in Year 4. For Year 5, B's three most recent test years are Years 1, 2, and 3. However, B's gross income from lending activities in Year 1 is not less than $3 million and 10% of B's gross income. Accordingly, section 6050P requires B to report discharges of indebtedness in Year 5. For Year 6, B satisfies the applicable safe harbor requirements of paragraph (b)(2) for each of the three most recent test years (Years 2, 3, and 4). Therefore, section 6050P does not require B to report discharges of indebtedness in Year 6. Because B is not required to report for Year 6, the applicable safe harbor for Year 7 is the one contained in paragraph (b)(1) of this section, and thus the only relevant test year is year 5.

§1.6050P-2(i)**(i) Effective date.** This section is effective for discharges of indebtedness occurring in any calendar year beginning at least two months after the date that the final regulations are published in the Federal Register.

Robert E. Wenzel,

*Deputy Commissioner of Internal Revenue.*

[FR Doc. 02-14825 Filed 6-12-02; 8:45 am]

END OF DOCUMENT - © Copyright 2006 RIA. All rights reserved.

**EXHIBIT 4**

8585    ☐ VOID    ☐ CORRECTED

| CREDITOR'S name, street address, city, state, and ZIP code | | OMB No. 1545-1424 **2005** Form **1099-C** | **Cancellation of Debt** |
|---|---|---|---|
| CREDITOR'S Federal identification number | DEBTOR'S identification number | 1 Date canceled | 2 Amount of debt canceled $ |
| DEBTOR'S name | | 3 Interest if included in box 2 $ | 4 |
| Street address (including apt. no.) | | 5 Debt description | |
| City, state, and ZIP code | | | |
| Account number (see instructions) | | 6 Check for bankruptcy ☐ | 7 Fair market value of property $ |

**Copy A**

**For Internal Revenue Service Center**

**File with Form 1096.**

For Privacy Act and Paperwork Reduction Act Notice, see the 2005 General Instructions for Forms 1099, 1098, 5498, and W-2G.

Form **1099-C**                Cat. No. 26280W                Department of the Treasury - Internal Revenue Service

**Do Not Cut or Separate Forms on This Page    —    Do Not Cut or Separate Forms on This Page**

☐ CORRECTED (if checked)

| CREDITOR'S name, street address, city, state, and ZIP code | | OMB No. 1545-1424 **20**05 Form **1099-C** | Cancellation of Debt |
|---|---|---|---|

| CREDITOR'S Federal identification number | DEBTOR'S identification number | 1 Date canceled | 2 Amount of debt canceled $ | **Copy B** **For Debtor** |
|---|---|---|---|---|

| DEBTOR'S name | 3 Interest if included in box 2 $ | 4 | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |
|---|---|---|---|

Street address (including apt. no.)

City, state, and ZIP code

5 Debt description

| Account number (see instructions) | 6 Bankruptcy (if checked) ☐ | 7 Fair market value of property $ |
|---|---|---|

Form **1099-C**    (keep for your records)    Department of the Treasury - Internal Revenue Service

## Instructions for Debtor

If a federal government agency, certain agency connected with the Federal government, financial institution, credit union, or an organization having a significant trade or business of lending money (such as a finance or credit card company) cancels or forgives a debt you owe of $600 or more, this form must be provided to you. Generally, if you are an individual, you must include the canceled amount on the "Other income" line of Form 1040. If you are a corporation, partnership, or other entity, report the canceled debt on your tax return. See the instructions for your tax return.

However, some canceled debts are not includible in your income, such as certain student loans (see Pub. 525), certain debts reduced by the seller after purchase (see Pub. 334), qualified farm debt (see Pub. 225), qualified real property business debt (see Pub. 334), or debts canceled in bankruptcy (see Pub. 908). Do not report a canceled debt as income if you did not deduct it but would have been able to do so on your tax return if you had paid it. Also, do not include canceled debts in your income to the extent you were insolvent. If you exclude a canceled debt from your income because it was canceled in a bankruptcy case or during insolvency, or because the debt is qualified farm debt or qualified real property business debt, file Form 982, Reduction of Tax Attributes Due to Discharge of Indebtedness (and Section 1082 Basis Adjustment).

**Account number.** May show an account or other unique number the creditor assigned to distinguish your account.

**Box 1.** Shows the date the debt was canceled.

**Box 2.** Shows the amount of debt canceled.

**Box 3.** Shows interest if included in the canceled debt in box 2. See Pub. 525, Taxable and Nontaxable Income, to see if you must include the interest in gross income.

**Box 5.** Shows a description of the debt. If box 7 is completed, box 5 shows a description of the property.

**Box 6.** If the box is marked, the creditor has indicated the debt was canceled in a bankruptcy proceeding.

**Box 7.** If, in the same calendar year, a foreclosure or abandonment of property occurred in connection with the cancellation of the debt, the fair market value of the property will be shown, or you will receive a separate Form 1099-A, Acquisition or Abandonment of Secured Property. You may have income or loss because of the acquisition or abandonment. See Pub. 544, Sales and Other Dispositions of Assets, for information about foreclosures and abandonments.

☐ VOID    ☐ CORRECTED

| CREDITOR'S name, street address, city, state, and ZIP code | | OMB No. 1545-1424 | **Cancellation of Debt** |
|---|---|---|---|
| | | **2005** | |
| | | Form **1099-C** | |
| CREDITOR'S Federal identification number | DEBTOR'S identification number | 1 Date canceled | 2 Amount of debt canceled $ |
| DEBTOR'S name | | 3 Interest if included in box 2 $ | 4 |
| Street address (including apt. no.) | | 5 Debt description | |
| City, state, and ZIP code | | | |
| Account number (see instructions) | | 6 Check for bankruptcy ☐ | 7 Fair market value of property $ |

**Copy C**
**For Creditor**

For Privacy Act
and Paperwork
Reduction Act
Notice, see the
**2005 General
Instructions for
Forms 1099,
1098, 5498,
and W-2G.**

Form **1099-C**

Department of the Treasury - Internal Revenue Service

## Instructions for Creditors

General and specific form instructions are provided as separate products. The products you should use to complete Form 1099-C are the 2005 General Instructions for Forms 1099, 1098, 5498, and W-2G, and the 2005 Instructions for Forms 1099-A and 1099-C. A chart in the general instructions gives a quick guide to which form must be filed to report a particular payment. To order these instructions and additional forms, call 1-800-TAX-FORM (1-800-829-3676).

**Caution:** *Because paper forms are scanned during processing, you cannot file Forms 1096, 1098, 1099, or 5498 that you download and print from the IRS website.*

**Due dates.** Furnish Copy B of this form to the debtor by January 31, 2006.

File Copy A of this form with the IRS by February 28, 2006. If you file electronically, the due date is March 31, 2006.

# 2005



Department of the Treasury
**Internal Revenue Service**

# Instructions for Forms 1099-A and 1099-C

Section references are to the Internal Revenue Code unless otherwise noted.

## Reminder

In addition to these specific instructions, you should also use the 2005 General Instructions for Forms 1099, 1098, 5498, and W-2G. Those general instructions include information about:

- Backup withholding
- Magnetic media and electronic reporting requirements
- Penalties
- Who must file (nominee/middleman)
- When and where to file
- Taxpayer identification numbers
- Statements to recipients
- Corrected and void returns
- Other general topics

You can get the general instructions from the IRS website at *www.irs.gov* or by calling 1-800-TAX-FORM (1-800-829-3676).

## Specific Instructions for Form 1099-A

File Form 1099-A, Acquisition or Abandonment of Secured Property, by February 28, 2006 (March 31, 2006, if filed electronically) for each borrower if you lend money in connection with your trade or business and, in full or partial satisfaction of the debt, you acquire an interest in property that is security for the debt, or you have reason to know that the property has been abandoned. You need not be in the business of lending money to be subject to this reporting requirement.

### Coordination With Form 1099-C

If, in the same calendar year, you cancel a debt in connection with a foreclosure or abandonment of secured property, it is not necessary to file both Form 1099-A and Form 1099-C, Cancellation of Debt, for the same debtor. You may file Form 1099-C only. You will meet your Form 1099-A filing requirement for the debtor by completing boxes 5 and 7 on Form 1099-C. However, if you file both Forms 1099-A and 1099-C, do not complete boxes 5 and 7 on Form 1099-C. See the instructions for Form 1099-C on page AC-2.

### Property

Property means any real property (such as a personal residence), any intangible property, and tangible personal property except:

- No reporting is required for tangible personal property (such as a car) held only for personal use. However, you must file Form 1099-A if the property is totally or partly held for use in a trade or business or for investment.
- No reporting is required if the property securing the loan is located outside the United States and the borrower has furnished the lender a statement, under penalties of perjury, that the borrower is an exempt foreign person (unless the lender knows that the statement is false).

### Who Must File

In addition to the general rule specified above, the following rules apply.

**Multiple owners.** If there are multiple owners of undivided interests in a single loan, such as in pools, fixed investment trusts, or other similar arrangements, the trustee, record owner, or person acting in a similar capacity must file Form 1099-A on behalf of all the owners of beneficial interests or participations.

In this case, only one form for each borrower must be filed on behalf of all owners with respect to the loan. Similarly, for bond issues, only the trustee or similar person is required to report.

**Governmental unit.** A governmental unit, or any of its subsidiary agencies, that lends money secured by property must file Form 1099-A.

**Subsequent holder.** A subsequent holder of a loan is treated as the lender for purposes of the reporting requirement for events occurring after the loan is transferred to the new holder.

**Multiple lenders.** If more than one person lends money secured by property and one lender forecloses or otherwise acquires an interest in the property and the sale or other acquisition terminates, reduces, or otherwise impairs the other lenders' security interests in the property, the other lenders must file Form 1099-A for each of their loans. For example, if a first trust holder forecloses on a building, and the second trust holder knows or has reason to know of such foreclosure, the second trust holder must file Form 1099-A for the second trust even though no part of the second trust was satisfied by the proceeds of the foreclosure sale.

### Abandonment

An abandonment occurs when the objective facts and circumstances indicate that the borrower intended to and has permanently discarded the property from use. You have "reason to know" of an abandonment based on all the facts and circumstances concerning the status of the property. You will be deemed to know all the information that would have been discovered through a reasonable inquiry when, in the ordinary course of business, you become aware or should become aware of circumstances indicating that the property has been abandoned. If you expect to commence a foreclosure, execution, or similar sale within 3 months of the date you had reason to know that the property was abandoned, reporting is required as of the date you acquire an interest in the property or a third party purchases the property at such sale. If you expect to but do not commence such action within 3 months, the reporting requirement arises at the end of the 3-month period.

### Statements to Borrowers

If you are required to file Form 1099-A, you must provide a statement to the borrower. Furnish a copy of Form 1099-A or an acceptable substitute statement to each borrower. For more information about the requirement to furnish a statement to the borrower, see part H in the 2005 General Instructions for Forms 1099, 1098, 5498, and W-2G.

### Account Number

The account number is required if you have multiple accounts for a borrower for whom you are filing more than one Form 1099-A. Additionally, the IRS encourages you to designate an account number for all Forms 1099-A that you file. See part P in the 2005 General Instructions for Forms 1099, 1098, 5498, and W-2G.

### Box 1. Date of Lender's Acquisition or Knowledge of Abandonment

For an acquisition, enter the date you acquired the secured property. An interest in the property generally is acquired on the earlier of the date title is transferred to the lender or the date possession and the burdens and benefits of ownership are

transferred to the lender. If an objection period is provided by law, use the date the objection period expires. If you purchase the property at a sale held to satisfy the debt, such as at a foreclosure or execution sale, use the later of the date of sale or the date the borrower's right of redemption, if any, expires.

For an abandonment, enter the date you knew or had reason to know that the property was abandoned unless you expect to commence a foreclosure, execution, or similar action within 3 months, as explained earlier. If a third party purchases the property at a foreclosure, execution, or similar sale, the property is treated as abandoned, and you have reason to know of its abandonment on the date of sale.

## Box 2. Balance of Principal Outstanding
Enter the balance of the debt outstanding at the time the interest in the property was acquired or on the date you first knew or had reason to know that the property was abandoned. Include only unpaid principal on the original debt. Do not include accrued interest or foreclosure costs.

## Box 3. Reserved

## Box 4. Fair Market Value (FMV) of Property
For a foreclosure, execution, or similar sale, enter the FMV of the property. See Temporary Regulations section 1.6050J-1T, Q/A-32. Generally, the gross foreclosure bid price is considered to be the FMV. If an abandonment or voluntary conveyance to the lender in lieu of foreclosure occurred, check "Yes" in box 5 and enter the appraised value of the property. Otherwise, make no entry in this box.

## Box 5. Was Borrower Personally Liable for Repayment of the Debt
Enter an "X" in the applicable box to indicate whether the borrower was personally liable for repayment of the debt at the time the debt was created or, if modified, at the time of the last modification.

## Box 6. Description of Property
Enter a general description of the property. For real property, generally you must enter the address of the property, or, if the address does not sufficiently identify the property, enter the section, lot, and block.

For personal property, enter the applicable type, make, and model. For example, describe a car as "Car —2001 Honda Accord." Use a category such as "Office Equipment" to describe more than one piece of personal property, such as six desks and seven computers. Enter "CCC" for crops forfeited on Commodity Credit Corporation loans.

## Specific Instructions for Form 1099-C
File Form 1099-C, Cancellation of Debt, for each debtor for whom you canceled a debt owed to you of $600 or more only if:

1. You are an entity described under *Who Must File* below and

2. An identifiable event has occurred. It does not matter whether the actual cancellation is on or before the date of the identifiable event. See *When Is a Debt Canceled* on page AC-3.

 *Form 1099-C must be filed regardless of whether the debtor is required to report the debt as income.*

The debtor may be an individual, corporation, partnership, trust, estate, association, or company.

Do not combine multiple cancellations of a debt to determine whether you meet the $600 reporting requirement unless the separate cancellations are under a plan to evade the Form 1099-C requirements.

## Coordination With Form 1099-A
If, in the same calendar year, you cancel a debt in connection with a foreclosure or abandonment of secured property, it is not necessary to file both Form 1099-A, Acquisition or

Abandonment of Secured Property, and Form 1099-C for the same debtor. You may file Form 1099-C only. You will meet your Form 1099-A filing requirement for the debtor by completing boxes 5 and 7 on Form 1099-C. However, you may file both Forms 1099-A and 1099-C; if you do, do not complete boxes 5 and 7 on Form 1099-C. See the instructions for Form 1099-A on page AC-1 and *Box 5* and *Box 7* on page AC-4.

## Who Must File
File Form 1099-C if you are:

1. A financial institution described in section 581 or 591(a) (such as a domestic bank, trust company, building and loan or savings and loan association).

2. A credit union.

3. A federal government agency including:

a. A department,

b. An agency,

c. A court or court administrative office, or

d. An instrumentality in the executive, judicial, or legislative branch of the government, including government corporations.

4. Any of the following, its successor, or subunit of one of the following:

a. Federal Deposit Insurance Corporation,

b. Resolution Trust Corporation,

c. National Credit Union Administration,

d. Any military department,

e. U.S. Postal Service, or

f. Postal Rate Commission.

5. A corporation that is a subsidiary of a financial institution or credit union, but only if, because of your affiliation, you are subject to supervision and examination by a federal or state regulatory agency.

6. For discharges occurring on or after January 1, 2005, any organization, a significant trade or business of which is the lending of money, such as a finance company or credit card company (whether or not affiliated with a financial institution). The lending of money is a significant trade or business if money is lent on a regular and continuing basis. Regulations section 1.6050P-2(b) of the final regulations published October 25, 2004, lists three safe harbors (see *Safe harbor rules* below) under which reporting may not be required for the current year.

**Safe harbor rules under Regulations section 1.6050P-2(b).** The three safe harbor rules in which an entity will not be considered to have a significant trade or business of lending money are:

1. No prior year reporting required. An organization will not have a significant trade or business of lending money for the current year if the organization was not required to report in the prior year and if its gross income in the most recent test year (see item *3* below) is less than both 15% of the organization's gross income and $5 million.

2. Prior year reporting requirement. An organization that had a prior year reporting requirement will not have a significant trade or business of lending money for the current year if, for each of the three most recent test years, its gross income from lending money is less than both 10% of the organization's gross income and $3 million.

3. No test year. Newly formed organizations are considered not to have a significant trade or business of lending money even if the organization lends money on a regular and continuing basis. However, this safe harbor does not apply to an entity formed or availed of for the principal purpose of holding loans acquired or originated by another entity. In this instance, the transferee entity (including real estate mortgage investment conduits (REMICs) and pass-through securitized indebtedness arrangements) may be required to report cancellation of indebtedness on Form 1099-C. See Regulations section 1.6050P-1(e)(5).

**Test year defined.** A test year is a taxable year of the organization that ends before July 1 of the previous calendar year. For example, X, a calendar year taxpayer who has a significant trade or business of lending money, is formed in year one. X will not have a test year in year one or year two.

However, for year three, X's test year will be year one. In year three, year one is the only year that ended before July 1 of the previous calendar year (in this example, year two).

**Penalties.** See Penalties in the 2005 General Instructions for Forms 1099, 1098, 5498, and W-2G.

*Amounts discharged in nonlending transactions.* Until further guidance is issued, no penalty will apply for failure to file Form 1099-C, or provide statements to debtors, for amounts discharged in nonlending transactions.

*Amounts forgiven pursuant to the terms of a debt obligation.* Until further guidance is issued, no penalty will apply for failure to file Form 1099-C, or provide statements to debtors, for amounts forgiven pursuant to the terms of a debt obligation.

**Multiple creditors.** If a debt is owned (or treated as owned for federal income tax purposes) by more than one creditor, each creditor that is described under *Who Must File* on page AC-2 must issue a Form 1099-C if that creditor's part of the canceled debt is $600 or more. To meet this requirement, a lead bank, fund administrator, or other designee of the creditor may file a single Form 1099-C reporting the aggregate canceled debt or may file Form 1099-C for that creditor's part of the canceled debt. Use any reasonable method to determine the amount of each creditor's part of the canceled debt.

Debt owned by a partnership is treated as owned by the partners and must follow the rules for multiple creditors.

**Pass-throughs and REMICs.** Until further guidance is issued, no penalty will apply for failure to file Form 1099-C, or provide statements to debtors, for a canceled debt held in a pass-through securitized debt arrangement or held by a REMIC. However, see item *3* under *Safe harbor rules* on page AC-2.

A pass-through securitized debt arrangement is any arrangement in which one or more debts are pooled and held for 20 or more persons whose interests in the debt are undivided co-ownership interests that are freely transferable. Co-ownership interests that are actively traded personal property (as defined in Regulations section 1.1092(d)-1) are presumed to meet these requirements.

### Debt Defined

A debt is any amount owed to you including stated principal, stated interest, fees, penalties, administrative costs, and fines. The amount of debt canceled may be all or only part of the total amount owed. However, for a lending transaction, you are required to report only the stated principal. See *Exceptions* below.

### When To File

Generally, file Form 1099-C for the year in which an identifiable event occurs. See *Exceptions* below. If you cancel a debt before an identifiable event occurs, you may choose to file Form 1099-C for the year of cancellation. No further reporting is required even if a second identifiable event occurs on the same debt. Also, you are not required to file an additional or corrected Form 1099-C if you receive payment on a prior year debt.

### When Is a Debt Canceled

A debt is canceled on the date an identifiable event occurs. An identifiable event is:

1. A discharge in bankruptcy under Title 11 of the U.S. Code for business or investment debt (see *Exceptions* on this page).

2. A cancellation or extinguishment making the debt unenforceable in a receivership, foreclosure, or similar federal or state court proceeding.

3. A cancellation or extinguishment when the statute of limitations for collecting the debt expires, or when the statutory period for filing a claim or beginning a deficiency judgment proceeding expires. Expiration of the statute of limitations is an identifiable event only when a debtor's affirmative statute of limitations defense is upheld in a final judgment or decision of a court and the appeal period has expired.

4. A cancellation or extinguishment when the creditor elects foreclosure remedies that by law end or bar the creditor's right to collect the debt. This event applies to a mortgage lender or holder who is barred by local law from pursuing debt collection after a "power of sale" in the mortgage or deed of trust is exercised.

5. A cancellation or extinguishment due to a probate or similar proceeding.

6. A discharge of indebtedness under an agreement between the creditor and the debtor to cancel the debt at less than full consideration.

7. A discharge of indebtedness because of a decision or a defined policy of the creditor to discontinue collection activity and cancel the debt. A creditor's defined policy can be in writing or an established business practice of the creditor. A creditor's practice to stop collection activity and abandon a debt when a particular nonpayment period expires is a defined policy.

8. The expiration of nonpayment testing period. This event occurs when the creditor has not received a payment on the debt during the testing period. The testing period is a 36-month period ending on December 31 plus any time when the creditor was precluded from collection activity by a stay in bankruptcy or similar bar under state or local law. The creditor can rebut the occurrence of this identifiable event if:

a. The creditor (or a third-party collection agency) has engaged in significant bona fide collection activity during the 12-month period ending on December 31 or

b. Facts and circumstances that exist on January 31 following the end of the 36-month period indicate that the debt was not canceled.

Significant bona fide collection activity does not include nominal or ministerial collection action, such as an automated mailing. Facts and circumstances indicating that a debt was not canceled include the existence of a lien relating to the debt (up to the value of the security) or the sale or packaging for sale of the debt by the creditor.

### Exceptions

You are not required to report on Form 1099-C the following:

1. Certain bankruptcies. You are not required to report a debt canceled in bankruptcy unless you know from information included in your books and records that the debt was incurred for business or investment purposes. If you are required to report a business or investment debt canceled in bankruptcy, report it for the later of:

a. The year in which the amount of canceled debt first can be determined or

b. The year in which the debt is canceled in bankruptcy.

A debt is incurred for business if it is incurred in connection with the conduct of any trade or business other than the trade or business of performing services as an employee. A debt is incurred for investment if it is incurred to purchase property held for investment (as defined in section 163(d)(5)).

2. Interest. You are not required to report interest. However, if you choose to report interest as part of the canceled debt in box 2, you must show the interest separately in box 3.

3. Nonprincipal amounts. Nonprincipal amounts include penalties, fines, fees, and administrative costs. For a lending transaction, you are not required to report any amount other than stated principal. A lending transaction occurs when a lender loans money to, or makes advances on behalf of, a borrower (including revolving credit and lines of credit). For a nonlending transaction, nonprincipal amounts are included in the debt. However, until further guidance is issued, no penalties will be imposed for failure to report these amounts in nonlending transactions.

4. Foreign debtors. Until further guidance is issued, no penalty will apply if a financial institution does not file Form 1099-C for a debt canceled by its foreign branch or foreign office for a foreign debtor provided all the following apply:

a. The financial institution is engaged in the active conduct of a banking or similar business outside the United States.

b. The branch or office is a permanent place of business that is regularly maintained, occupied, and used to carry on a banking or similar financial business.

c. The business is conducted by at least one employee of the branch or office who is regularly in attendance at the place of business during normal working hours.

d. The indebtedness is extended outside the United States by the branch or office in connection with that trade or business.

e. The financial institution does not know or have reason to know that the debtor is a U.S. person.

5. **Related parties.** Generally, a creditor is not required to file Form 1099-C for the deemed cancellation of a debt that occurs when the creditor acquires the debt of a related debtor, becomes related to the debtor, or transfers the debt to another creditor related to the debtor. However, if the transfer to a related party by the creditor was for the purpose of avoiding the Form 1099-C requirements, Form 1099-C is required. See section 108(e)(4).

6. **Release of a debtor.** You are not required to file Form 1099-C if you release one of the debtors on a debt as long as the remaining debtors are liable for the full unpaid amount.

7. **Guarantor or surety.** You are not required to file Form 1099-C for a guarantor or surety. A guarantor is not a debtor for purposes of filing Form 1099-C even if demand for payment is made to the guarantor.

8. **Seller financing.** Organizations whose principal trade or business is the sale of non-financial goods or non-financial services, and who extend credit to customers in connection with the purchase of those non-financial goods and non-financial services, are not considered to have a significant trade or business of lending money, with respect to the credit extended in connection with the purchase of those goods or services, for reporting discharge of indebtedness on Form 1099-C. See Regulations section 1.6050P-2(c). But the reporting applies if a separate financing subsidiary of the retailer extends the credit to the retailer's customers.

## Multiple Debtors

For debts of $10,000 or more incurred after 1994 that involve debtors who are jointly and severally liable for the debt, you must report the entire amount of the canceled debt on each debtor's Form 1099-C. Multiple debtors are jointly and severally liable for a debt if there is no clear and convincing evidence to the contrary. If it can be shown that joint and several liability does not exist, a Form 1099-C is required for each debtor for whom you canceled a debt of $600 or more.

For debts incurred before 1995 and for debts of less than $10,000 incurred after 1994, you must file Form 1099-C only for the primary (or first-named) debtor.

If you know or have reason to know that the multiple debtors were husband and wife who were living at the same address when the debt was incurred, and you have no information that these circumstances have changed, you may file only one Form 1099-C.

## Recordkeeping

If you are required to file Form 1099-C, you must retain a copy of that form or be able to reconstruct the data for at least 4 years from the due date of the return.

## Requesting TINs

You must make a reasonable effort to obtain the correct name and taxpayer identification number (TIN) of the person whose debt was canceled. You may obtain the TIN when the debt is incurred. If you do not obtain the TIN before the debt is canceled, you must request the debtor's TIN. Your request must clearly notify the debtor that the IRS requires the debtor to furnish its TIN and that failure to furnish such TIN subjects the debtor to a $50 penalty imposed by the IRS. You may use Form W-9, Request for Taxpayer Identification Number and Certification, to request the TIN. However, a debtor is not required to certify his or her TIN under penalties of perjury.

## Statements to Debtors

If you are required to file Form 1099-C, you must provide a statement to the debtor. Furnish a copy of Form 1099-C or an acceptable substitute statement to each debtor. For more information about the requirement to furnish a statement to the debtor, see part H in the 2005 General Instructions for Forms 1099, 1098, 5498, and W-2G. You have furnished a statement to the debtor if it is mailed to the debtor's last known address.

## Account Number

The account number is required if you have multiple accounts for a debtor for whom you are filing more than one Form 1099-C. Additionally, the IRS encourages you to designate an account number for all Forms 1099-C that you file. See part P in the 2005 General Instructions for Forms 1099, 1098, 5498, and W-2G.

## Box 1. Date Canceled

Enter the date the debt was canceled. See *When Is a Debt Canceled* on page AC-3.

## Box 2. Amount of Debt Canceled

Enter the amount of the canceled debt. See *Debt Defined* on page AC-3 and *Exceptions* on page AC-3. Do not include any amount the lender receives in satisfaction of the debt by means of a settlement agreement, foreclosure sale, etc.

## Box 3. Interest if Included in Box 2

Enter any interest you included in the canceled debt in box 2. You are not required to report interest in box 2. But if you do, you also must report it in box 3.

## Box 4. Reserved

## Box 5. Debt Description

Enter a description of the origin of the debt, such as student loan, mortgage, or credit card expenditure. Be as specific as possible. If you are filing a combined Form 1099-C and 1099-A, include a description of the property.

## Box 6. Check for Bankruptcy

Check the box if you are reporting a debt canceled in bankruptcy.

## Box 7. Fair Market Value (FMV) of Property

If you are filing a combined Form 1099-C and 1099-A for a foreclosure, execution, or similar sale, enter the FMV of the property. Generally, the gross foreclosure bid price is considered to be the FMV. If an abandonment or voluntary conveyance to the lender in lieu of foreclosure occurred, enter the appraised value of the property.

# EXHIBIT 5

Federal Tax - Primary Sources - Rulings & Other Docs. -

## MISC-DOC, 99ARD 110-5, Returns: Cancellation of debt: Form 1099-C: Comment request.

**Notice and Request for Comments Regarding Form 1099-C▶**

[Code Sec. 6050P]

◀**Returns:▶ Cancellation of debt: Form 1099-C: Comment request.**

DEPARTMENT OF THE TREASURY
Internal Revenue Service
Proposed Collection; Comment Request for ◀**Form 1099-C.▶**
AGENCY: Internal Revenue Service (IRS), Treasury.
ACTION: Notice and request for comments.
SUMMARY: The Department of the Treasury, as part of its continuing effort to reduce paperwork and respondent burden, invites the general public and other Federal agencies to take this opportunity to comment on proposed and/or continuing information collections, as required by the Paperwork Reduction Act of 1995, Public Law 104-13 (44 U.S.C. 3506(c)(2)(A)). Currently, the IRS is soliciting comments concerning ◀**Form 1099-C,▶** Cancellation of Debt.
DATES: Written comments should be received on or before [INSERT DATE 60 DAYS AFTER DATE OF PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER] to be assured of consideration.
ADDRESSES: Direct all written comments to Garrick R. Shear, Internal Revenue Service, room 5571, 1111 Constitution Avenue NW., Washington, DC 20224.
FOR FURTHER INFORMATION CONTACT: Requests for additional information or copies of the ◀**form▶** and instructions should be directed to Faye Bruce, (202) 622-6665, Internal Revenue Service, room 5577, 1111 Constitution Avenue NW., Washington, DC 20224.
SUPPLEMENTARY INFORMATION:

Title: Cancellation of Debt.

OMB Number: 1545-1424.

◀**Form▶** Number: **1099-C.**

Abstract: ◀**Form 1099-C▶** is used by Federal government agencies, financial institutions, and credit unions to report the cancellation or forgiveness of a debt of $600 or more, as required by section 6050P of the Internal Revenue Code. The IRS uses the **form** to verify compliance with the reporting rules and to verify that the debtor has included the proper amount of canceled debt in income on his or her income **tax return.**

Current Actions: There are no changes being made to the ◀**form▶** at this time. However, separate specific **form** instructions are being proposed for payers who wish to order only the information pertaining to **Form 1099-C.** The specific instructions would be combined with the general instructions to create a booklet similar to the 1999 Instructions for **Forms** 1099, 1098, 5498, and W-2G.

Type of Review: Extension of a currently approved collection.

Affected Public: Business or other for-profit organizations, not-for-profit institutions, and the Federal government.

Estimated Number of Responses: 647,993.

Estimated Time Per Response: 10 min.

Estimated Total Annual Burden Hours: 110,159.

The following paragraph applies to all of the collections of information covered by this notice:

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection of information displays a valid OMB control number. Books or records relating to a collection of information must be retained as long as their contents may become material in the administration of any internal revenue law. Generally, ◄tax returns► and **tax return** information are confidential, as required by 26 U.S.C. 6103.

REQUEST FOR COMMENTS: Comments submitted in response to this notice will be summarized and/or included in the request for OMB approval. All comments will become a matter of public record. Comments are invited on: (a) Whether the collection of information is necessary for the proper performance of the functions of the agency, including whether the information shall have practical utility; (b) the accuracy of the agency's estimate of the burden of the collection of information; (c) ways to enhance the quality, utility, and clarity of the information to be collected; (d) ways to minimize the burden of the collection of information on respondents, including through the use of automated collection techniques or other ◄**forms** of information technology; and (e) estimates of capital or start-up costs and costs of operation, maintenance, and purchase of services to provide information.
Approved: June 1, 1999
Garrick R. Shear,
IRS Reports Clearance Officer

NON: RCB01 99ARD110-5 http://tax.cchgroup.com/network&JA=LK&INoSplash=Y&&LKQ=GUID%3Aabca3853-b413-3f8a-87be-56ab98c5d599&KT=L&INoLFN=TRUE& RCB01 #30235 [RULINGS RULINK CBLINK ]

© 2006, CCH INCORPORATED.    Find help at http://support.cch.com, call Research Specialists at 800-344-3734,  | Back to Top
All Rights Reserved.                                                         or call Tech Support at 800-835-0105.

**EXHIBIT 6**

LIMITATIONS FOR CIVIL ACTIONS

(Letters indicate footnotes. Figures indicate years.)
O-Oral—W-Written

| State | Promissory Notes | Open Accounts | Instruments and Contracts Under Seal | Ordinary Contracts | Domestic Judgments in Courts of Record | Domestic Judgments in Courts Not of Record | Foreign Judgments in Courts of Record | Foreign Judgments in Courts Not of Record |
|---|---|---|---|---|---|---|---|---|
| Ala. | 6(a) | 3(a) | 10 | 6(a) | 20 | 6 | 20 | No prov. |
| Alaska | 6 | | 10 | 6(a) | 10 | 10 | 10 | 10 |
| Ariz. | 6(b) | 3(a) | 6(b) | 6-W—3-O(a) | 5 | 5 | 4 or (d) | 4 or (d) |
| Ark. | 5* | 3(a) | 5* | 5-W—3-O(a)* | 10 | 10* | 10 | 10 |
| Calif. | 4 | 4(a) | 4 | 4-W—2-O(a) | 10 | 10 | 10 | 10 |
| Colo. | 6 | 6(a) | 6(a)(c ) | 6(a)(c) | 20 | 6 | 6 | 6 |
| Conn. | 6 | 6(a) | 6-W—3-O(a) | 6-W—3-O(a) | 20(ff) | 20(ff) | No prov. | No prov. |
| Del. | 6 | 3(a) | No prov. | 3(a) | No prov. | No prov. | No prov. | No prov. |
| D.C. | 3 | 3(a) | 12 | 3(a) | 3 | 3 | (d) | (d) |
| Fla. | 5 | 4(a) | No prov. | 5-W—4-O(a) | 20 | 5 | 7 | 7 |
| Ga. | 6 | 4(a) | 20 | 6-W—4-O(a) | 7(e) | 7(e) | 5 | 5 |
| Hawaii | 6 | 6(a) | 6(a) | 6(a) | 10 | 6 | 6 | 4 |
| Idaho | 5 | 4(a) | 5 | 5-W—4-O(a) | 6 | 6 | 6 | 6 |
| Ill. | 10 | 5(a) | 10(f) | 10-W—5-O(a) | 20 | No prov. | 5 | 5 |
| Ind. | 10 | 6(a) | 20 | (y)(a) | 20 | 15 | 20 | 15 |
| Iowa | 10 | 5(a) | 10 | 10-W—5-O(a) | 20(ee) | 10 | 20 | 10 |
| Kan. | 5 | 3(a) | 5 | 5W—3O(a) | Kept alive by execution every five years | | | No. prov. |
| Ky. | 15(h) | 5(a)(i) | 15 | 15-W—5-O(a) | 15 | 15 | 15 | 15 |
| La. | 5 | 3 | 10 | 10 | 10(dd) | 10(dd) | 10(dd) | 10(dd) |
| Me. | 6(j) | 6(a) | 20(a) | 6(a) | 20(v) | 6(k )(v) | 20 | 6 |
| Md. | 3(a) | 3(a) | 12 | 3(a) | 12 | 12 | 12 | 12 |
| Mass. | 6(l) | 6(a) | 20 | 6(a) | 20(v) | 6 | 20(v) | 9 |
| Mich. | 6(a) | 6(a) | 6(a) | 6(a) | 10 | 6 | 10 | 6 |
| Minn. | 6(a)(cc) | 6(a)(cc) | 6 | 6(a)(cc) | 10 * | 10 | 10 | 10 |
| Miss. | 3* | 3 | 3* | 3-W—3-O(a)* | 7 | 3* | 7(m) | 3* |
| Mo. | 10W-5O(a) | 5 | 10W-5O(a) | 10W-5O(a) | 10 | 5 | 10 | 5 |
| Mont. | 8 | 5(a) | 8 | 8-W—5-O(a) | 10 | 5 | 10 | 5 |
| Neb. | 5 | 4(a) | 5 | 5-W—4-O(a) | Kept alive by execution every five years | | 5 | 5 |
| Nev. | 6 | 4(a)(aa) | 6 | 6-W—4-O(a) | 6(aa) | 6 | 6 | 6 |
| N.H. | 3 | 3(a) | 20 | 3(a) | 20 | 20 | 20 | 20 |
| N.J. | 6 | 6(a) | 16 ' | 6(a) | 20 | 6 | 20 | 20(d) |

## LIMITATIONS FOR CIVIL ACTIONS

### (Letters indicate footnotes. Figures indicate years.) *(Continued)*
#### O-Oral—W-Written

| State | Promissory Notes | Open Accounts | Instruments and Contracts Under Seal | Ordinary Contracts | Domestic Judgments in Courts of Record | Domestic Judgments in Courts Not of Record | Foreign Judgments in Courts of Record | Foreign Judgments in Courts Not of Record |
|---|---|---|---|---|---|---|---|---|
| N.M. | 6 | 4(a) | 6 | 6-W—4-O(a) | 14 | 6 | 14 | 6 |
| N.Y. | 6(a) | 6(a) | 6(a) | 6(a) | 20 | 20(v) | 20(v) | 20(v) |
| N.C. | 3 | 3(a) | 10 | 3(a) | 10 | 7 | 10 | 7 |
| N.D. | 6(a) | 6(a) | 6(c) | 6(a) | 10 | 10 | 10 | 7 |
| Ohio | 15 | 15W-60(a) | 15 | 15W-60(a) | 21 | 21 | 15 | 15 |
| Okla. | 5 | 3(a) | 5 | 5-W—3-O(a) | Execution or garnishment summons kept alive by every five years | | 3 | 3 |
| Ore. | 6 | 6(a) | No limit(u) | 6(a) | 10 | 10 | 10 | 10 |
| Pa. | 6 | 6(a) | 20 | 6W-40 | 4 | 4 | 4 | 4 |
| P.R. | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 |
| R.I. | 10 | 10 | 20 | 10 | 20 | 20 | 20 | 20 |
| S.C. | 3 | 3(a) | 20 | 3(a) | 10 | 10 | 20 | 20 |
| S.D. | 6 | 6(a) | 20 | 6(a) | 20 | 20 | 10 | 10 |
| Tenn. | 6 | 6(a) | 6(a) | 6(a) | 10 | 10 | 10 | 10 |
| Texas | 4 | 4(a) | 4 | 4(a) | 10 | 10 | 10 | 10 |
| Utah | 6 | 4(a) | 4 | 4(a)* | 10 | 10 | 10 | 10 |
| Vt. | 6(n) | 6(a) | 6 | 6-W—4-O(a) | 8 | 8 | 8 | 8 |
| Va. | 5 | 3(a) | 5 | 5-W—3-O(a) | 8(bb) | 6 | 8(bb) | 6 |
| Wash. | 6 | 3(a)* | 6 | 6-W—3-O(a)* | 20 | 20 | 10 | 10 |
| W.Va. | 10 | 5(a) | 10 | 10-W—5-O(a)* | 10 | 10 | 10 | 10 |
| Wis. | 6* | 6(a)* | 10 | 10-W—5-O(a) | 10 | 10 | 10 | 10 |
| Wyo. | 10 | 8(a) | 6* | 6(a) | 20 | 6 | 20 | 6 |
| | | | | 10-W-8-O(a) | 5(q) | 5(q) | 5 | 5 |

\* Can be renewed.

\* Agricultural property owed by a farm debtor may not be executed upon real or personal property after three years from the date the judgment was entered.

¹ Note: An action founded upon an instrument under seal by a merchant or bank, finance company, or other financial institutions in New Jersey must be commenced within six years after the cause of action accrues.

(a) Uniform Commercial Code §2-725 provides a four year statute of limitations as to sales contracts. The parties may by original agreement reduce the period of limitation to not less than one year, but they may not extend it.

(b) Instruments executed without the state, four years.

(c) Contracts affecting real property, 10 years.

(d) Suit may be brought on a foreign judgment unless statute of limitations has run against it in the jurisdiction where it was entered.

(e) Judgments are dormant seven years after rendition if no execution, or seven years after execution or seven years after written notice of public effort to enforce is filed with the clerk.

(f) Vendor's lien, mortgage, 20 years.

(g) Contract to convey land, 15 years; contract for payment of money, 10 years.

(h) If note has been placed on the footing of a bill of exchange, five years.

(i) An action on a merchant's account must be instituted within five years from January 1 following the dates or time of delivery of the articles charged in the account.

(j) If attested by witnesses, 20 years.

(k) Judgments of Trial Justices Courts, 20 years.

(l) If note attested by witness and action brought by original payee or executor or administrator, 20 years.

(m) If debtor resided in Mississippi when foreign judgment was rendered, then it is barred in three years.

(n) Held by case law to be 20 years.

(o) If note attested by witnesses, 21 years.

(p) If action accrues outside the state, 10 years.

(q) May be revived within 21 years after it becomes dormant.

(r) As provided in state giving judgment.

(s) May be revived once by filing a transcript of the judgment before the limitation expires, action may be brought within seven years after revival.

(t) 15 years written accounts.

(u) An action on a sealed instrument entered into before August 13, 1965, must be commenced within 10 years.

(v) Presumption of payment arises after 20 years.

(w) Except as provided in Maine UCC Sec. 2-725.

(x) Special limitations apply to counterclaims.

(y) Six years Oral, 10 years Money, 15 years Realty, 20 years other than money.

(z) An action on a merchant's account must be commenced within five years of the next January 1st succeeding the date of delivery.

(aa) Nevada limitation periods apply unless further limited by UCC.

(bb) If a promissory note was witnessed—21 years.

(cc) Except where Uniform Commercial Code otherwise applies.

(dd) Foreign judgments unenforceable in foreign state are unenforceable in Louisiana.

(ee) No judgment in an action for foreclosure of a real estate mortgage or deed of trust or for rent or judgment of credits assigned by a receiver of a closed bank when assignee is not a trustee for creditors or depositors shall be enforced and no execution thereon given for other than as a set-off or counterclaim after two years from the entry thereof. The judgment may not be renewed except by voluntary written stipulation of the parties.

(ff) 10 years small claims.