# EXHIBIT 2

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBT BUYERS' ASSOCIATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:06CV00101 (CKK) |
| ) | |
| JOHN W. SNOW, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### DECLARATION OF DENNIS HAMMOND

I, Dennis Hammond, a person of the full age of majority, states under penalty of perjury as follows:

1. The facts stated in this Declaration are based on my personal knowledge and are true and correct to the best of my knowledge, information, and belief.

2. I am the Executive Director of the Debt Buyers' Association ("DBA"), the named plaintiff in the above-referenced lawsuit. I have been Executive Director since DBA was formed in 1998. As Executive Director, I am responsible for day-to-day operations of the Association and oversee all strategic and educational efforts undertaken by the Association. I have been involved in the debt buying industry since 1994 in various capacities and provide consulting services with respect to the purchasing and selling of debt.

3. This Declaration describes how the business operations of many of DBA's members who are engaged in the business of purchasing and collecting consumer debt ("Debt Buyers") will be severely damaged as a result of the issuance and filing of inaccurate Forms

1099-C required by Section 6050P of the Internal Revenue Code, 26 U.S.C. U.S.C. § 6050P.[1] It also describes the steps DBA and others in the debt buying industry have taken to address with the Internal Revenue Service the intractable problems associated with the application of Section 6050P to Debt Buyers.

5. The majority of DBA's members are "standard members," meaning they are small business operations that generally purchase and collect debt in a single State. The very existence of these standard members' businesses is threatened by the legal fees and costs associated with defending, and the potential damage awards issued pursuant to, lawsuits brought by consumers who receive from these Debt Buyers inaccurate Forms 1099-C, for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. Indeed, DBA anticipates that many of its standard members will be driven out of business by the insurmountable costs of simultaneously attempting to obtain the debt component information they generally do not have, but that must be included on the Forms 1099-C, and defending against FDCPA litigation.

6. Many, if not most, of the consumer debtors whose defaulted debt is purchased by Debt Buyers from originating lenders (or from other Debt Buyers) are insolvent at the time of purchase of their debt and remain so for an extended period of time after purchase, and it is not unusual for such consumer debtors to file for bankruptcy after purchase.

7. On or about January 25, 2005, I became aware that Debt Buyers, for the first time, would have to comply with the information reporting and filing requirements of Section 6050P by virtue of newly promulgated Treasury Regulation § 1.6050P-2(e).

---

[1] On or about January 3, 2006, a class action lawsuit was filed against DBA member, Arrow Financial Services, LLC, for violations of the FDCPA arising out of that member's efforts to comply with Section 6050P. *See Robetta S. Johnston v. Arrow Financial Servs., Inc.*, No. 06-C-0013 (N.D. Ill. Jan. 3, 2006).

2

8. On or about January 26, 2005, in response to learning that Section 6050P would apply to Debt Buyers effective for debts discharged on or after January 1, 2005, I met with, among others, Roger Knauf, the President of DBA, in Tampa, Florida, to discuss federal and state legislative issues facing the debt buying industry. During the meeting, Mr. Knauf and I discussed the issue of Debt Buyers having to issue and file Forms 1099-C (the "Forms 1099-C issue") and the need to assess how the reporting and filing requirements of Section 6050P would affect DBA's members.

9. On or about February 7, 2005, DBA representatives attended a meeting in Las Vegas, Nevada with a number of other sister organizations in the debt buying industry, including ACA International, the National Association of Retail Collection Attorneys, and the Commercial Law League. During the meeting, the Forms 1099-C issue was discussed at length and concerns were expressed that compliance with Section 6050P would expose Debt Buyers to substantial and continuing liability under the FDCPA.

10. On or about February 9, 2005, while attending an industry conference, I spoke to Mr. Tom Kane of the Federal Trade Commission ("FTC") about the conflict between Section 6050P and the existing provisions of the FDCPA prohibiting making any "false representation" of the "character, amount, or legal status of any debt."

11. On or about April 6, 2005, DBA representatives again met with representatives of ACA International, the National Association of Retail Collection Attorneys, and the Commercial Law League in Chicago, Illinois and further discussed the implications of the Forms 1099-C issue. At this meeting, it was decided to craft a joint letter to the Internal Revenue Service ("IRS") requesting clarification on how Debt Buyers could both comply with Section 6050P and avoid violating the FDCPA.

3

12. On or about April 24, 2005, the DBA submitted to ACA International issues and questions the DBA sought to have included in the joint letter to the IRS.

13. On or about May 18, 2005, ACA International submitted the joint letter discussing the debt buying industry's concerns regarding the Forms 1099-C issue (the "joint letter"). In particular, the joint letter highlighted for the IRS that with respect to consumer accounts purchased by Debt Buyers, "it is difficult, if not impossible, to distinguish the amount of principal due on the account from the amount of interest, charges or fees due on the account at the time of sale." The joint letter went on to emphasize that, "as a practical matter, the seller of the account cannot itemize principal, interest, charges and fees due on the accounts once they are charged off to bad debt, bundled and sold as a portfolio." For several months prior to the joint letter, representatives of ACA International had been in contact with IRS officials regarding the Forms 1099-C issue.

14. On or about June 29, 2005, the DBA held an executive retreat in La Jolla, California, at which a presentation on the Forms 1099-C issues was given. The presentation generated numerous questions and concerns from Debt Buyers. During the retreat, a representative of ACA International informed me that the IRS had stated that it would respond to the May 18, 2005 joint letter in early June of 2005.

15. On or about August 18, 2005, I participated in a quarterly conference call with representatives of various debt buying industry organizations. One issue discussed was the fact that the IRS had not responded to the joint letter. Possible legislative initiatives to address the Forms 1099-C issue, including lobbying certain members of Congress, were also discussed.

16. On or about September 14, 2005, ACA International sent to the IRS a follow-up letter to the May 18, 2005 joint letter.

17. On or about September 29, 2005, I, along with other representatives of DBA, met with nine members of Congress to discuss the Forms 1099-C issue and the IRS' failure to respond to the joint letter.

18. On or about October 7, 2005, the IRS responded to the May 18, 2005 joint letter. The IRS' response, however, did not address DBA's specific questions and concerns regarding the conflict between the information reporting and filing requirements of Section 6050P and the resulting violations under the FDCPA those requirements would cause.

19. After evaluating the IRS' response to the joint letter, on or about November 7, 2005, the Board of Directors of DBA met and approved the hiring of a law firm to address the Forms 1099-C issue on its behalf.

20. On or about November 15, 2005, Congressman Pete Sessions and Senator Orin Hatch sent a letter to the IRS requesting the IRS grant DBA a meeting and stay the enforcement of Section 6050P against Debt Buyers until the Forms 1099-C issue could be resolved.

21. On or about December 7, 2005, DBA engaged Howard Solodky, a tax attorney with the law firm of Womble Carlyle Sandridge & Rice, PLLC in Washington, D.C., to address the Forms 1099-C issue on behalf of the DBA before the IRS. Shortly thereafter, Mr. Solodky contacted Ms. Donna Welch of the IRS who agreed to a meeting with Mr. Solodky and other representatives of the DBA to discuss possible resolution of the Forms 1099-C issue.

22. On or about December 19, 2005, Mr. Solodky sent a position letter to Ms. Welch and Mr. William Kostak of the IRS, in which the Forms 1099-C issue was fully set forth, including an explanation of how the debt buying industry operates and underscoring the fact that Debt Buyers typically do not receive from originating lenders all the information to accurately or completely fill out Forms 1099-C when and as required by Section 6050P and its accompanying

regulations. The letter requested a one-year postponement of the application of Treas. Reg. § 1.6050P-2(e) to Debt Buyers.

23. On or about December 22, 2005, Mr. Solodky and other representatives of the DBA met with Ms. Welch and Mr. Kostak of the IRS to discuss the Forms 1099-C issue. Ms. Welch and Mr. Kostak requested additional information on (i) the potential legal bases on which class action and other private action lawsuits could be brought under the FDCPA on behalf of consumers who receive inaccurate Forms 1099-C, and (ii) the steps DBA and other members of the debt buying industry could take during 2006 to enhance the availability of information for, and the accuracy of, Forms 1099-C if a one-year reprieve were granted the debt buying industry from having to comply with Section 6050P.

24. On or about December 30, 2005, Mr. Solodky, on behalf of the DBA, sent a letter to Ms. Welch and Mr. Kostak of the IRS responding to their requests for additional information.

25. On or about January 12, 2005, Ms. Welch telephoned DBA's counsel, Mr. Solodky, to advise that the IRS was denying DBA's request for a one-year reprieve from having to comply with Section 6050P.

26. In light of the IRS' denial of relief to the debt buying industry and the impending January 31, 2006 deadline under Section 6050P for having to issue to consumer debtors Forms 1099-C with respect to debts "discharged" in 2005, DBA filed the instant action on January 19, 2006.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 23 January 2006.

_____
Dennis Hammond