IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBT BUYERS' ASSOCIATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:06CV00101 (CKK) |
| | ) |
| JOHN W. SNOW, Secretary | ) |
| of the Treasury, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY TO DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff Debt Buyers' Association ("DBA" or "Debt Buyers"), through its undersigned counsel and pursuant to Fed. R. Civ. P. 7, and LcvR 7(d), and the briefing schedule set by this Court in its January 20, 2006 order, hereby replies to Defendants' Motion to Dismiss and Opposition to Motion for Temporary Restraining Order and Preliminary Injunction (Defendants' Memorandum in support of its Motion and Opposition is referred to herein as "Defendants' Opposition").

I.  **THE FDCPA DILEMMA**

This case is perhaps best characterized by the old cliché "damned if you do and damned if you don't." In this case, Debt Buyers are faced with an impossible dilemma – impossible because Debt Buyers want to comply with the law but cannot. Treasury Regulation § 1.6050P-2(e) (the "Regulation") and the federal law regulating debt collectors (the "FDCPA") present an inherent conflict; complying with one causes violation of the other. Debt Buyers do not seek

relief from tax liability. Nor do Debt Buyers seek to prevent the IRS from collecting taxes or even from gathering information that will culminate in the collection of taxes. Rather, Debt Buyers seek relief for three primary purposes: (i) to avoid violating the law (FDCPA); (ii) to prevent their assets (debts) from being rendered uncollectable and therefore valueless; and (iii) to protect their constitutional rights and entitlements.

Defendants dismiss the inherent conflict and the dilemma faced by Debt Buyers by asserting, in essence, that it is irrelevant. *See* Defs.' Opp. at 20. Conspicuously absent from Defendants' brief is *any* analysis whatsoever of the interaction between the Regulation and the FDCPA, let alone citation to any authority regarding the same. Defendants miss the point. The very filing of an inaccurate Form 1099-C is itself a violation of the FDCPA. Indeed, the FDCPA is a strict liability statute, tailored to protect the "least sophisticated consumer." Consistent with this application, courts have held that the issuance to a consumer of a Form 1099-C extinguishes the rights to collect or enforce the underlying debt from the least sophisticated consumer.[1]

Throughout this process, Defendants have given little, if any, credence to the inherent conflict between the Regulation and the FDCPA. While Defendants acknowledged the conflict in their response to the industry, they added insult to injury by advising simply that "[i]f, however, the entity cannot obtain this information, the entity should report using the best available information." *See* Defs.' Opp. at 26. This tacit admission that Debt Buyers will be unable to provide accurate Forms 1099-C provides, at best, a proposed course of conduct which addresses only Debt Buyers' inevitable culpability under the Regulation. It fails to address, let

---

[1] *See e.g., In re Crosby*, 261 B.R. 470, 474 (Bankr. D. Ka. 2001) (finding that credit union's filing of Forms 1099-C "was analogous to assigning the debts to the IRS, necessarily passing to the IRS any right to collect money from the debtors on account of the debts.").

2

alone proposes to resolve, the inherent violation of the FDCPA caused by the mere filing of an inaccurate Form 1099-C.

Not only do Defendants fail to contemplate the conflict between the Regulation and the FDCPA, they also fail to rebut the uncontroverted record evidence clearly demonstrating Debt Buyers' inability to comply with Defendants' own regulation.[2] Defendants have ignored the fact that lenders have historically not retained detailed account information when their delinquent consumer loan accounts have gone to charge-off because it was cost prohibitive, unnecessary, and not required by law.  Further, lenders have had no reason to maintain and transfer to debt purchasers the loan account detail now being requested from Debt Buyers by the IRS under Section 6050P because Debt Buyers were not previously subject to Form 1099-C filing requirements.  While the information could be made available for future filings, it would require a reasonable "grand fathering" provision with respect to previously purchased debt.

## II.    THIS COURT HAS JURISDICTION TO REDRESS THE FDCPA DILEMMA

The primary purpose of this action is to prevent the irreparable injury DBA's members now face because of the Defendants' unconstitutional conduct.  At no point has DBA challenged the ability or the right of the Defendants to lawfully assess and collect taxes.  At no point has DBA challenged the ability or the right of the Defendants to lawfully engage in activities culminating in the assessment and collection of taxes.[3]  Defendants' characterization of this

---

[2]    Throughout their brief, Defendants ignore and attack the significant factual underpinnings of DBA's contentions, as set forth in no less than two declarations from individuals well versed in the debt buying industry.  Of course, Defendants make no proffer of their own to dispute DBA's contentions.  They simply say that it is not so.

[3]    Defendants maintain that DBA's action parallels that which the Supreme Court adjudicated in *Bob Jones Univ. v. Simon*, 416 U.S. 725 (1974).  The petitioners in *Bob Jones* however were contesting the IRS' determination of the University's tax-exempt status – an agency action that would, ultimately, effect the tax liability of the University.  DBA's suit, in

action as such a challenge diverts attention from the claims DBA does assert – that the Defendants' ability to assess and collect taxes must not transgress the delineated authority Congress has bestowed upon them to do so. The Defendants are not above the law. Indeed, Courts interpret the Anti-Injunction Act to ensure this result – the Act *"must yield* when the denial of judicial review rises to the level of a constitutional infirmity."[4] It is fundamental that federal officials cannot force persons to break the law. It is also fundamental that the Anti-Injunction Act must give way where, as here, Congress has provided no alternative opportunity for an ultimate judicial adjudication of the full scope of harm a federal agency has unleashed.[5]

Notably, Defendants lose even under the test they cite. Defs.' Opp. at 9. Defendants argue that the test for determining if the Anti-Injunction Act applies is whether "the district court's order would operate to prevent IRS from assessing and collecting taxes . . . ."[6] In this case, the requested order would not prevent the IRS from assessing or collecting taxes. First, historically Debt Buyers have not been required to issue and file Forms 1099-Cs. Therefore, the IRS cannot argue that it has required or relied upon this information. More importantly, however, it is patently illogical for the Defendants to claim that *inaccurate* information would now lead to effective assessment or collection of taxes. Debt Buyers simply do not possess the information Defendants are seeking, and cannot fully comply with the Form 1099-C filing requirement even if they wished to. In sum, the Regulation does not impact Defendants' ability

---

contrast, challenges an IRS regulation that compels Debt Buyers to violate both the IRS' own reporting requirement *and,* at the same time, an independent federal regulatory scheme that has, for nearly 30 years, specifically controlled the debt collecting industry without interference or qualification.

[4]     *Investment Annuity, Inc. v. Blumenthal,* 609 F.2d 1, 6 (D.C. Cir. 1979) (emphasis added).

[5]     *See South Carolina v. Regan,* 465 U.S. 367, 378 (1984)

[6]     *See* Defs.' Opp. at 9 (quoting *Investment Annuity, Inc. v. Blumenthal,* 609 F.2d 1, 4-5 (D.C. Cir. 1979).

to assess and collect taxes because it produces flawed results. Indeed, if the purpose of Form 1099-C filings is, as Defendants claim, to "improve the taxpayers' ability to report accurately their income and allow the Internal Revenue Service to review those returns as efficiently as possible," the Regulation does not aid at all in such a process.

Even if the Anti-Injunction Act applies (which it does not), the Debt Buyers fall under both exceptions to the Act. Defendants cite *Foodservice and Lodging Institute,* for the proposition that it is not sufficient to claim that reporting requirements are cumbersome. *See* Defs.' Opp. at 10. Debt Buyers, however, are not making such a trivial complaint. They are claiming that the reporting requirements compel them to violate the FDCPA and to deprive them of rights of enforcement and collection under state law which effectively renders their purchased consumer debts worthless. Moreover, Defendants point to no alternative forum which can address or remedy all of the Debt Buyers' injuries in connection with this Regulation, specifically the forced and automatic violations of the FDCPA and the taking of property (purchased debts) without just compensation.

*South Carolina* provides that the "[Anti-Injunction] Act's purpose and the circumstances of its enactment indicate that Congress did not intend the Act to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy." 456 U.S. 367, 378 (1984). Defendants attempt to sidestep this issue by arguing that Debt Buyers may seek relief by pursuing refund litigation. Relying on *Foodservice*, Defendants argue that Debt Buyers can refuse to file Forms 1099-C, pay the statutory fine, and then sue for a refund of the fine. *See* Defs.' Opp. at 6. However, by definition and as acknowledged by the court in *Foodservice*, these potential remedies are narrowly focused; *i.e.*, for the specific refund of the penalty. Refund

5

litigation does not provide, however, a forum with either the jurisdiction or ability to provide the remedy required under *South Carolina*.[7]

### III. THE REGULATION IS INVALID

Defendants argue that the Regulation is valid because it reasonably interprets the phrase "the lending of money" under Section 6050P and is therefore entitled to *Chevron* deference.[8] The Regulation, however, is invalid under *Chevron* step 1 because it contradicts the specific and express intent of Congress in the statute and legislative history. No where on the face of the statute, or in the legislative history, did Congress include or express even an intent to include Debt Buyers as lenders.[9]

Nor are Defendants entitled to deference under *Chevron* step 2 because their interpretation is unreasonable. Moreover, even assuming, that Defendants could reach *Chevron* step 2, which they cannot, they fail to proffer any reasonable interpretation of the statute. Defendants assert that "the *business* of lending money necessarily includes collecting what has

---

[7] Not only is refund litigation insufficient to remedy the harm arising from violations of the FDCPA, there is no subsequent action that can be brought against Defendants to redress the injuries Debt Buyers currently fact. *See Brendsel v. Office of Federal Housing Enterprise Oversight*, 383 F. Supp.2d 52, 66-67 (D.D.C. 2004).

[8] In *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984), the Supreme Court set forth a two part test for determining whether an agency's interpretation of a statute it administers should be given deference:

> Under this analysis, the court must first exhaust the traditional tools of statutory construction to determine whether Congress has spoken to the precise question at issue . . . If the court can determine congressional intent, then that interpretation must be given effect. . . If, on the other hand, the statute is silent or ambiguous with respect to the specific issue, then the court will defer to a permissible agency construction of the statute.

*Halverson v. Slater*, 129 F.3d 180, 184 (D.C. Cir. 1997) (discussing *Chevron's* two part test) (citation omitted).

[9] *See* Pl.'s Initial Br. at 21-26.

been lent plus interest and fees . . . ." Defs.' Opp. at 18. This bald assertion is fatally flawed; indeed, it is a logical fallacy. While lenders of money may occasionally engage in collecting debt, it does not follow that buying and collecting debt includes lending money. To the contrary, Debt Buyers do not originate loans or otherwise engage in the "lending of money." This flaw in Defendants' logic is further evidenced by the fact that Congress exempted loan originators (lenders), who engage in collection activities, from the FDCPA, thereby avoiding the very dilemma Debt Buyers face. Defendants' "reasonableness argument" contemplates that Congress intended to treat lenders and Debt Buyers the same for purposes of Section 6050P, but intended to treat them differently for purposes of the FDCPA. This is an untenable conclusion, however.

Defendants' discussion of Section 6050J and its accompanying regulations misses, perhaps intentionally, the entire point of Plaintiff's mention of the interrelationship between that statute and Section 6050P. The *only* rationale that Defendants offered when they proposed the Regulation was that it was intended to be consistent with temporary regulations under Section 6050J, which do refer to subsequent holders of loans as being required to comply with the information reporting requirements of Section 6050J. But Defendants ignore the fact that Section 6050J on its face does not apply to consumer loans (as confirmed by its legislative history), while the Regulation applies to all types of loans including, of course, consumer loans. Therefore, even Defendants' own consistency rationale for the Regulation cannot support its validity.

IV.     **DBA'S REQUEST FOR EQUITABLE RELIEF IS TIMELY**

DBA engaged in persistent efforts to avoid the urgency of the current situation; Defendants' suggestion to the contrary is mistaken.[10] Moreover, Defendants do not satisfy the elements for a Laches defense.

DBA's efforts to avoid the instant dilemma were, as demonstrated by the record, diligent. DBA engaged in an extensive effort, with other members of the debt buying industry, to seek relief from the effects of the Regulation. DBA corresponded with the IRS on multiple instances, approached the FTC, lobbied members of both the United States House of Representatives and the United States Senate, met with officials of the IRS, and *only* instituted this suit upon the Defendants' recent denial of DBA's requests for relief.[11] This action was filed a mere seven days after Defendants refused DBA's request for a temporary stay of the Form 1099-C filing requirement for its members. Indeed, this was the earliest possible moment that DBA could have sought this Court's relief, or Defendants would have argued that DBA's injury was speculative and not ripe. Defendants cannot have it both ways.

Further, Defendants fail to demonstrate that they have been prejudiced by this purported delay. The Laches inquiry requires that Defendants have relied to their detriment upon DBA's

---

[10]     *See* Pl.'s Supp. Mem. at 16 n.4, citing the Declaration of Dennis Hammond ¶¶ 7-26, attached thereto as Exhibit 2, to demonstrate the year-long efforts DBA made to attempt to resolve this situation directly with the Defendants.

[11]     Notably, actions delayed for greater amounts of time have not been barred by the Laches defense when plaintiff has engaged in similar efforts to resolve the harm before filing suit. *See Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 844 (D.C. Cir. 1982) (finding that plaintiff's suit was not barred even though three years had passed from the date the claim arose, and six months had passed from defendant's last denial of plaintiff's request for administrative relief because defendants were not prejudiced).

delay in filing suit.[12] Defendants have yet to even receive the alleged benefits of Forms 1099-C from DBA's members; thus, they cannot pretend to claim that they have relied upon such filings.

For the reasons stated in Plaintiff's papers, this Court should issue the requested injunction.

                                            Respectfully submitted,

                                            _____/s/_____
                                            Deborah J. Israel, Esq. (D.C. Bar. No. 430841)
                                            Womble Carlyle Sandridge & Rice, PLLC
                                            1401 Eye Street, N.W., 7th Floor
                                            Washington, D.C. 20005
                                            Tel: (202) 467-6900
                                            Fax: (202) 467-6910

                                            *Counsel for Plaintiff Debt Buyers' Association*

Of Counsel:

Howard N. Solodky, Esq.
Louis J. Rouleau, Esq.
Alida M. Dagostino, Esq.
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street, N.W., 7th Floor
Washington, D.C. 20005
Tel: (202) 467-6900
Fax: (202) 467-6910

---

[12]     *NAACP v. NAACP Legal Def.& Educ. Fund, Inc.*, 753 F.2d 131, 137-38 (D.C. Cir. 1985) ("Laches may bar injunctive relief *when the defendant has established a substantial reliance interest.*"); *Gull Airborne*, 694 F.2d at 843 ("Laches does not depend solely on the time that has elapsed between the alleged wrong and the institution of suit; it is 'principally a question of the inequity of permitting the claim to be enforced – an inequity founded upon some change in the condition or relations of the property or the parties.' It closely tracks…whether a defendant suffered prejudice from the delay.").

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff's Reply to Defendants' Motion to Dismiss and Opposition to Motion for Temporary Restraining Order and Preliminary Injunction has been served this 24th day of January 2006 on the following:

**VIA ELECTRONIC CASE FILING**

Mercedeh Momeni, Esq.
Assistant U.S. Attorney
U.S. Attorneys Office
501 Third Street, N.W., 4th Floor
Washington, DC 20530

Jennifer L. Vozne, Esq.
Department of Justice
Tax Division
555 4th Street, N.W., Room 6126
Washington, DC 20530

**VIA E-MAIL (PDF Format)**

David A. Hubbert, Esq.
Department of Justice
Tax Division
555 4th Street, N.W., Room 6126
Washington, DC 20530

/s/
Deborah J. Israel